SPRINGFIELD SEED COMPANY, Appellant, v. MARTIN WALT, Respondent.

St. Louis Court of Appeals, April 15, 1902.

1. Contract of Sale: EXCLUSIVE MARKET: INDEPENDENT COVENANT. The stipulation granting an exclusive right to the defendant to sell seeds in a certain market, is independent of defendant's undertaking to pay a certain sum for the seed; so much so, that plaintiff does not have to prove, as a condition precedent before it can recover, that it did not sell any seed whatever in the territory embraced in the contract.

2. ———: ———: INJURY FROM BREACH OF CONTRACT: COUNTERCLAIM. The stipulation granting an exclusive right to the defendant to sell seeds, whatever the territory embraced, was not a dependent covenant or condition precedent, which plaintiff was bound to prove it had performed in order to recover, as it did not go to or constitute the entire consideration moving the defendant to buy the seeds for the price of which this action was

Springfield Seed Co. v. Walt.

brought; and whatever loss defendant sustained from plaintiffs wrongful sales constituted an injury for which he could have sought compensation by a separate action, or by a counterclaim in this one.

3. ———: AMBIGUOUS WORDS: PROOF OF EXPLANATION. The words "exclusive sale" at the foot of the contract are of uncertain meaning and call for explanation by either oral or written evidence, as to what the parties intended to express by them.

4. ———: EXCLUSIVE SALE IN CERTAIN TERRITORY: BURDEN OF PROOF. The burden was on the defendant to establish that the words "exclusive sale" included his customers outside the town; and on plaintiff of proving that defendant assented to a sale in such town.

Appeal from Howell Circuit Court.—*Hon. William N. Evans,* Judge.

REVERSED AND REMANDED.

### STATEMENT OF THE CASE.

The plaintiff is a domestic corporation engaged in the business of selling garden seeds at wholesale and brought this action to recover from the defendant the price of twenty-five boxes of seeds.

The action is based on the following contract:

"Order for package garden seeds from Springfield Seed Store, Ricketts & Walker, Props., Springfield, Mo.

"Please ship in due time for season of 1901, 25 boxes, 500 each of assorted garden seeds in lithographed packages, at $15 per 1,000 packages. No additional charge for seed cases.

"Terms: Net June 1, 1901, five per cent spot cash on receipt of invoice, $187.50. Our packet seeds are not sold on commission. The sale is outright, and bill is due and payable on the above terms. But to protect you against loss, and at the same time to protect our own reputation,

our agent, when he calls next season, will take up and destroy all 5-cent packets you may have on hand that vitality expires on, and that will be unfit for next year's sale, and allow you to select the value of the seed so destroyed in any seed you may desire for the following season's trade.

"K. C. Produce Co.,

"West Plains, Mo.

"Ship Jan. 1, 1901 without fail.

"Exclusive sale."

The defendant admitted the execution of the contract and delivery of the seeds to the amount of one hundred and eighty-seven dollars and fifty cents. The answer then stated that the defendant bought the seeds under a contract and understanding with the plaintiff that he was to have the exclusive sale of seeds in West Plains, and to his customers, country merchants, outside the city of West Plains; that the defendant had violated the contract by selling seeds of the same variety to dealers in West Plains and to defendant's customers throughout the country. The answer further alleged that defendant used his best efforts to sell the seeds; that he sold all he could, to-wit, thirteen boxes; that if plaintiff had carried out its contract he could have sold all the rest of the seeds, to-wit, twelve boxes, thereby realizing a profit of five dollars on a box; but on account of the plaintiff's breach of the contract, defendant was prevented from selling the same; that the amount realized by the sales he made was ninety-seven dollars and fifty cents, which sum he tendered to plaintiff in open court, and also twelve boxes remaining unsold.

Plaintiff's replication denied the allegations of new matter contained in the answer and averred that the contract between the parties gave the defendant the exclusive right to sell in the city of West Plains and at no other point, and that

by the contract plaintiff was not excluded from selling seeds at places other than West Plains. The sale of one box for seven dollars and fifty cents to a firm by the style of Doty & Woodrel, in the city of West Plains, was admitted in connection with an averment that the defendant was notified of that sale at the time he gave the order to plaintiff and assented to it, and the replication offered to deduct the value of the seeds so sold to Doty & Woodrel from its account against the defendant.

A stipulation was made between the parties and introduced on the trial, admitting that after the contract was made between plaintiff and defendant, plaintiff sold boxes of seeds of the same kind and variety sold to defendant, to four firms of merchants doing business at different points in Ozark county, Missouri, and to one firm in Fulton county, Arkansas.

It is proper to state somewhat fully the testimony of defendant Walt, as the defense rests on it entirely. He swore that Richard Ricketts, a member of the plaintiff company and its agent, visited him at his place of business in West Plains in September, 1900, saying he wanted to place plaintiff's seeds with one man in West Plains and would like to make arrangements with the defendant as he was a large dealer; that Ricketts further said:

"I will give you the exclusive sale of these seeds; you will get the exclusive sale." Walt said: "I studied a few minutes and I says, 'I will do it.' At first he omitted 'exclusive sale,' and I called his attention to it and he added it to it right on the bill there and urging them to ship January first. The seeds came, I think, on January second."

He further testified that several merchants came in and got goods and he tried to sell them seeds. Some of them had seeds in their wagons. Walt further testified as follows:

"Q. What was the inducement for you to buy so many seeds?

"A.. That I could sell them to the country merchants and men here in town; that I could job them.

"Q. That was discussed by you and Ricketts?

"A. Yes, sir; any one knows that twenty-five boxes of garden seeds are too many for a man to retail, he couldn't possibly retail them."

On cross-examination he testified:

"Q. You say you had the right to sell at other points to country merchants?

"A. Yes, sir.

"Q. What points were mentioned in your conversation between you and him?

"A. No points.

"Q. How was he to know where you wanted to sell these seeds unless he knew the points you traded?

"A. I sold every place over this country.

"Q. How did he know unless you told him?

"A. He didn't know where I sold, I guess.

"Q. You took the privilege of twenty-five boxes here to cut them out of sales in all southern Missouri?

"A. No, sir; I didn't.

"Q. What places did you include in this term, 'exclusive sale'?

"A. I expected those that traded with me, my customers.

"Q. You never informed them who you traded with?

"A. No, sir; I didn't.

"Q. They never knew until this term of court who you claimed traded with you?

"A. No, sir, they didn't; what should a man do if he is a jobber?"

Further along occurred the following:

"Q. Did you tell these people that Wiles & Company were customers of yours?

"A. Certainly not; do I tell my business to the whole world?

"Q. Did you think your twenty-five boxes of seeds gave you the exclusive right to southern Missouri?

"Q. No, sir, I expected to sell to anybody who came in to buy goods; I would show him and try to sell to him.

"Q. E. N. Rand, Wild Cherry, Fulton county, Arkansas?

"A. Yes, sir.

"Q. They are customers of yours?

"A. Yes, sir.

"Q. Do you claim exclusive right to sell to them?

"A. No, sir, I don't; I claimed the exclusive right to sell to anybody that wanted them.

"Q. You claimed the exclusive right just as the wholesale company at Springfield sells seeds to you?

"A. Yes, sir."

It appears that the sales of seeds made to outside merchants in southern Missouri and northern Arkansas by the plaintiff, occurred during the spring months and that the defendant made no complaint of those sales, although he knew about them, until he was pressed to pay his account in June, when he wrote the following letter:

"West Plains, Mo., June 12, 1901.
"Springfield Seed Store,
        "Springfield, Mo.

"Gents: Your statement to hand and in reply we will say we are ready to pay you for what seeds we have sold, but will not pay for those unsold. We have written contract to have exclusive sale here and instead almost every one has them and you had a drummer to sell every little store around West Plains. As a consequence we decline to pay for only

what we have used. Any time you come down we will check up with you.

"Yours truly,
"KANSAS CITY PRODUCE CO."

Prior to that he said he had written a notation on a statement of an account sent him by the plaintiff in which he raised no question about the outside sales. His testimony on the point is as follows:

"A. The first one was written on one of their statements, a little notation like this other one.

"Q. What did you state in that letter?

"A. I said the account wasn't correct and I wouldn't pay it.

"Q. In that statement you said nothing about those outside sales?

"A. No, sir, I didn't.

"Q. Although you had known of them since early in the spring?

"A. Yes, sir."

No proof was offered of any damage sustained by the defendant, by reason of plaintiff's alleged breaches of the contract. The testimony introduced on behalf of the defendant tended to show the understanding between the parties was that Walt should have the exclusive sale of seeds in the town of West Plains, but nowhere else, and that he was notified when the contract was made that plaintiff had a salesman then working towns in southern Missouri and selling to merchants in the interior; further, that plaintiff's business in northern Arkansas and southern Missouri was quite large and it would have been absurd to give the defendant the exclusive right to that trade.

The court of its own motion gave the following instruction:

"The court instructs the jury that under the contract

read in evidence, defendant had the exclusive right to handle and sell the seeds of plaintiff's company in the city of West Plains and in the territory in the adjacent country to any merchants, if any, specially agreed upon at the time the contract was made; and although you may believe plaintiff sold and delivered seeds to Doty & Woodrel, if they notified defendant at the time this contract was made, or had defendant's consent thereto, then such sale to Doty & Woodrel would not be a violation of such contract and it devolves upon the defendant to prove by the greater weight of the evidence that such contract embraced merchants and territory outside of West Plains, and that plaintiff violated such contract."

An instruction was asked by the plaintiff to the effect that the burden was on the defendant to prove the words "exclusive sale" covered other places or parties than West Plains, which was covered by the one quoted; another that it meant only West Plains and that the sale to Doty & Woodrel should be deducted from the amount of plaintiff's recovery, and also the following:

"The court instructs the jury that the term 'exclusive sale,' contained in the contract in evidence, gave the defendant the exclusive right to sell the seeds in the city of West Plains and to dealers and merchants at points other than West Plains, if any, whose names were mentioned and agreed upon at the time, and that you will find for plaintiff unless you find from the evidence that plaintiff sold seeds to such other parties, to whom plaintiff agreed not to sell.

"The court instructs the jury that although the jury might believe from the evidence that the defendant had the right to the exclusive sales at other places than the city of West Plains, yet it was his duty, as soon as he had ascertained that plaintiff had sold seeds at such other points, to notify plaintiff and refuse to carry out his contract; and unless he did so inform plaintiff, he is presumed in law to have adopted and

ratified the contract as claimed by plaintiff, and you should find for the plaintiff."

All plaintiff's requests were refused.

These instructions asked by the defendant were given.

"The court instructs the jury that the defendant had the exclusive right to sell the seeds of plaintiff in West Plains, Missouri, and sales made to any other person or persons, or any shipment of seeds to any other person or persons doing business in West Plains, Missouri, after the contract was entered into between plaintiff and defendant, without the permission of defendant would be a violation of the contract, and if you find such has been done then you should return a verdict for the defendant.

"The court instructs the jury that it devolves on the plaintiff to show by a preponderance of the evidence, which means the greater weight of the evidence, that the defendant consented to or gave his permission to sell seed to Doty & Woodrel in West Plains, Missouri, or that defendant knew at the time of the contract of such sale to Doty & Woodrel."

Exceptions were duly saved by the plaintiff to the rulings on the instructions, and the jury having returned a verdict in defendant's favor, a motion for a new trial was filed in due time and overruled, an exception saved to that ruling and the cause appealed.

*A. Harrington* and *Livingston & Burroughs* for appellant.

Perhaps the most palpable error in the whole record was the giving, by the court, of instruction numbered 1 on the part of respondent. That instruction told the jury that the sale to Doty & Woodrel, if done after the contract was made and without respondent's permission, would be a violation of the contract and they should find for respondent. This instruction was given, though appellant had by its pleadings given respondent credit for the amount of the sale. It declares the

law to be that a breach of contract will operate an absolute rescission of the same. We candidly submit that such is not the law. Certainly the rule does not apply in cases of this kind. The only remedy would be in damages for the breach.

GOODE, J.—1. At the foot of the contract between the appellant and respondent are the words "exclusive sale," which are of uncertain meaning as they stand, and call for explanation by either oral or written evidence as to what the parties intended to express by them. State v. Cunningham, 154 Mo. 161; Carney v. Chillicothe Water & Light Co., 76 Mo. App. (K. C.) 532. The testimony of Walt, while very indefinite, was barely sufficient to support the inference that the understanding between him and plaintiff's agent (Ricketts) was that he (Walt) was to have the sole right to sell to merchants in the country tributary to the West Plains market who were his customers.

Both sides adopted the theory in the instructions requested, that the plaintiff had the right to sell to all persons outside of West Plains not named and agreed on at the time the contract was made as within defendant's exclusive privilege; but Walt's evidence tended to prove an understanding that plaintiff was to refrain from selling to his outside customers who traded in West Plains, none of whom was mentioned at the time. That sort of a contract, although it is highly improbable that it was ever made, would be binding.

2. The instructions to the jury propounded the erroneous theory that if the plaintiff had made sales in violation of the compact between it and the defendant, that fact constituted a complete defense to the action; that is, if the plaintiff had sold to any customers of Walt in the surrounding territory, or to Doty & Woodrel in West Plains, without his consent.

The covenant or stipulation granting an exclusive right to the defendant to sell seeds, whatever the territory it em-

braced, was not a dependent covenant or condition precedent, which plaintiff was bound to prove it had performed in order to recover, as it did not go to or constitute the entire consideration moving the defendant to buy the seeds for the price of which this action was brought; the twenty-five boxes of seeds were part and a large part of the consideration. The stipulation for an exclusive market to the defendant, and the latter's agreement to pay for the seeds he bought, were independent covenants; so that whatever loss defendant sustained from plaintiff's wrongful sales constituted an injury for which he could have sought compensation by a separate action or by a counterclaim in this one; but the bare fact that breaches were committed did not excuse him from paying his account. Turner v. Mellier, 59 Mo. 526; Sawyer v. Christian, 40 Mo. App. (St. L.) 295; Kauffman v. Raeder, 108 Fed. Rep. 171.

Whether the covenants of a contract are dependent or independent; that is to say, whether they amount to conditions precedent so that a party suing on the contract must show he has performed or was ready to perform, to entitle him to recover, is a question respecting the intention of the contracting parties, and their intention is to be derived from the terms of the agreement by the usual methods of construction, courts are accustomed to say. But that general rule is more edifying as one phase of the principle that the intentions of parties who make agreements will be enforced, than helpful as a means of ascertaining what they intend, which is really effected by the application "of common sense to each particular case," as was said in Stavers v. Curling, 3 Bing. (N. C.) 368. The mutuality of covenants turns on the intimacy of their connection, considered in the light of the entire agreement—whether one was so bound up with the other that the failure of one party to perform a stipulation hindered performance by the other party, or left him without an adequate consideration for performance. A wholesome rule, and the most practical one for determining whether covenants are mu-

tual or independent, was once well stated by Lord ELLEN-BOROUGH as follows: "When the mutual covenants go to the whole of the consideration, they are mutual conditions, the one precedent to the other; but where the covenants go only to a part, then a remedy lies on the covenant to recover damages for the breach of it; but it is not a condition precedent." Ritchie v. Atkinson, 10 East. 306; Leake on Contracts, 650. Tested by that criterion, the stipulation for an exclusive market to Walt was independent of his undertaking to pay for the seeds he bought, and his redress for a breach by the plaintiff was, as said, either an action or by way of recoupment in this case. Whatever remedy he pursues, it is incumbent on him to show the damage he sustained by the plaintiff's wrongful sales, and his recovery should be confined to the amount of damage shown.

3. The burden was on the defendant to establish that the words "exclusive sale," included his customers outside West Plains and that plaintiff made unauthorized sales, and on the plaintiff to show the defendant assented to the sale made to the firm in West Plains and waived any claim on account of it.

For the errors noted the judgment is reversed and the cause remanded. *Bland, P. J.,* and *Barclay, J.,* concur.