## KANSAS CITY PANTS & SKIRT CO. v. COHLMIA.

No. 19164. Opinion Filed Sept. 17, 1929.

152

Mauntel & Spellmen, Winger, Reeder, Barker, Gumbinger & Hazard, and Keaton, Wells, Johnston & Barnes, for plaintiff in error.

E. W. Snoddy, for defendant in error.

TEEHEE, C. Plaintiff in error, Kansas City Pants & Skirt Company, referred to as plaintiff, sued defendant in error, Frank Cohlmia, referred to as defendant, to recover the sum of $830.85, as a balance due plaintiff for merchandise sold to defendant between the dates of August 9, 1923, and February 14, 1924, at Waynoka. The original account was for $1,682.40, whereon defendant, on various dates from December 17, 1923, to January 21, 1924, had paid a total sum of $851.55. A verified statement of the account was attached to the petition.

By his answer defendant denied the account, and further defended against the suit with a plea of a breach of contract by plaintiff, wherein he alleged, in substance, that on or about August 1, 1923, plaintiff's agent represented to him that plaintiff was the manufacturer of a special and exclusive line of ladies' coats and dresses, and desired to place said line in Waynoka where defendant conducted a store, and that if defendant would purchase said merchandise, defendant should have the exclusive market therefor in said place of business; that, acting upon said representations, he agreed to handle plaintiff's merchandise, and thereby was induced from time to time to make purchases from plaintiff until he discovered that plaintiff had breached its agreement with him, in that it had sold to another merchant in Waynoka the same line of coats and dresses, whereupon he notified plaintiff of such breach, and that plaintiff thereupon advised him that its agent would call and make full explanation of the transaction thus complained of; that without such representations and agreement for an

exclusive market he would not have purchased such merchandise from plaintiff; that upon plaintiff's advising him that its agent would call and fully explain in the premises of his complaint, and soon thereafter, he returned to plaintiff the merchandise on hand which at the invoice price thereof was in the value of $464.50, leaving a balance of the account sued on in the sum of $366.35, which he tendered and offered to said plaintiff and by it refused, which return of goods and tender and offer of payment discharged his liability under his agreement with plaintiff, and which sum he tendered into court for the use and benefit of said plaintiff. Upon trial there was a jury verdict and judgment thereon for plaintiff in the amount of the cash tender made by defendant.

Of the judgment plaintiff complains on the grounds that the court gave an erroneous instruction to the jury, and that the court failed "to instruct on the limitations upon the right to rescind, and the affirmative duty of the rescinding party to act promptly, and to restore whatever has been received by virtue of the contract," which grounds may properly be considered together.

At the threshold we are met with defendant's contentions that, in the state of the record, the questions submitted by plaintiff for a reversal of the judgment cannot be considered by this court for the reason that certain requisites for the presentation thereof have not been complied with. In the view that we shall take of the merits of the cause, we deem it to be unnecessary to determine the points thus urged by defendant, which, in effect, are the equivalent of a motion to dismiss the appeal. We, therefore, pass to the merits of the cause.

The instruction complained of is No. 5, and is as follows:

"If you believe from the evidence, facts and circumstances that on or about the 1st day of August, 1923, the said plaintiff, through its traveling salesman, approached the defendant and represented and stated to him that the plaintiff was a manufacturer of ladies dresses and coats of a particular and exclusive line; that the plaintiff desired to place the said line of dresses and coats in Waynoka, Okla.; and desired to have the said defendant carry said line of goods; that if the defendant would purchase said line of dresses and coats, the plaintiff would not sell the said line of dresses and coats to any other merchant in the town of Waynoka, so long as the defendant would purchase the said line of goods from the said plaintiff; that the said defendant, believing the said representa-

tions and statements, and especially the one to the effect that so long as the defendant purchased the said line of goods from the plaintiff, the said plaintiff would not sell the said line of dresses and coats to any other merchant in the town of Waynoka, and relying thereon was induced to and did purchase from time to time the said line of goods from the said plaintiff; that if the representations, and especially the one to the effect that so long as the defendant purchased the said line of goods, wares and merchandise from the said plaintiff, the said plaintiff would not sell the said line to any other merchant in the town of Waynoka, had not been made, the said defendant would not have purchased from the said plaintiff any of the said goods, wares and merchandise; that the said plaintiff, in violation of the said representations, statements and agreement, sold the line of dresses and coats to another merchant in the town of Waynoka, while the said defendant was still purchasing the said line of goods and dresses from the said plaintiff; that upon discovering the violation of the said agreement, the said defendant returned to the said plaintiff all of the said line of dresses and coats he had on hand remaining unsold, which he had formerly purchased from the plaintiff, then your verdict should be for the plaintiff for the difference between the amount and value of the goods and merchandise so returned and the amount of the account unpaid before the return of such goods.

"If you believe from the evidence, facts and circumstances that the plaintiff did not represent and state to the defendant that it was a manufacturer of ladies' dresses and coats of a particular and exclusive line, and that if the defendant would handle the said line he would be the merchant in Waynoka who would have the said line exclusively, then it follows that the defendant would have no right to return any of the goods unsold by him, and that plaintiff would be entitled to recover the whole amount sued for."

Plaintiff contends that the instruction is materially erroneous, in that it does not express the correct rule of law applicable to this class of cases, and further that it did not advise the jury of the conditions and limitations upon the right of rescission as fixed by sections 5077-79, C. O. S. 1921, there being no other instruction relating to the right of rescission.

Of the several cases relied on in plaintiff's argument hereunder, Springfield Seed Co. v. Walt, 94 Mo. App. 76, 67 S. W. 938; Tufts v. Weinfield, 88 Wis. 647, 60 N. W. 992; and Tichnor Bros. v. Evans, 92 Vt. 278, 102 Atl. 1031, L. R. A. 1918C, 1025, in point of fact have a direct bearing upon the points thus urged.

The Springfield Seed Company Case was an action by the seller to recover from the purchaser the price of garden seeds sold under a contract which bore the indorsement "Exclusive Sale." In defense the purchaser alleged that this gave to him an exclusive market at the place of his business, and to his customers and country merchants outside of the place of his establishment, and that plaintiff breached such provision for an exclusive market by the sale of seeds to other dealers in that place, and to defendant's customers throughout the country; that of the stock of seeds he sold a certain part, and failed to dispose of the remainder because of plaintiff's breach of its contract, and tendered to plaintiff in open court the amount he had realized from the sales less his profit, and also offered the return of the stock on hand. In disposing of the case, the court held as follows:

"The stipulation granting an exclusive right to the defendant to sell seeds, whatever the territory embraced, was not a dependent covenant or condition precedent, which plaintiff was bound to prove it had performed in order to recover, as it did not go to or constitute the entire consideration moving the defendant to buy the seeds for the price of which this action was brought; and whatever loss defendant sustained from plaintiff's wrongful sales constituted an injury for which he could have sought compensation by a separate action, or by a counterclaim in this one."

The Tufts Case was a like action for the recovery of the price of a sodawater apparatus sold to the defendant under the representation that a like apparatus would not be sold to anyone else on the same street in the town of defendant's business. The court in disposing of the case reached the conclusion that the representations made by plaintiff not to sell such apparatus to other parties "did not relate to any existing fact in praesenti, but only to future sales," holding:

"As an inducement to the giving of an order for a sodawater fountain, the manufacturer's agent promised orally that he would not sell any fountain of that make to anyone else on the same street, and the vendees relied on such promise, but the agent intended to break it and did break it. Held, that there was not such a fraud or false representation as would entitle the vendee to rescind or cancel the order. Lee v. Simmons, 65 Wis. 523, distinguished."

Tichnor Bros. Case was an action to recover the balance due on goods sold. Of the goods constituting the account, there

was included certain post card sets of which the seller agreed it would not sell to any one else in the town of defendant's business. Plaintiff breached this agreement, and on that ground the purchaser defended, contending that plaintiff was not entitled to recover anything for that reason. The court denied this contention, holding:

"In a contract of sale of certain merchandise, the breach of a stipulation that the vendor would not sell like merchandise to any of the vendee's competitors in trade will not justify the vendee in refusing to pay the contract price, since the breach does not go to the essence of the contract, but only to a part of the consideration, and may be compensated for in damages."

It is clear that those cases proceeded on the theory that where the breach may be regarded as subordinate or incidental to the main purposes of the contract, the obligation of the contractee is unaffected thereby with respect to performance on his part, and only constitutes such a breach by the contractor as may be compensable in damages, and thus of itself is insufficient to give rise to the right of rescission by the contractee. This is a familiar principle of law, and has found general application to other classes of contractual relations in many jurisdictions, the other authorities cited by plaintiff being such cases, and among them Putnam City Co. v. Minnetonka Lbr. Co., 95 Okla. 149, 218 Pac. 1061. It would therefore appear that plaintiff's contentions find support by competent authority.

It is to be observed that upon this phase of the case defendant has not presented an argument nor referred us to any case in support of the judgment, for which reasons, under a long line of decisions by this court, we would be warranted under the cases relied on by plaintiff to reverse the judgment complained of in accordance with the prayer of the petition in error. However, as we think the rule of law relied on by plaintiff is not the correct doctrine to be here applied, we are not content to thus rest our disposition of the case, for to us it is clear that the breach on which the defendant predicated his defense went to the essence of the agreement between the parties.

Upon the issue of whether or not there was an agreement for an exclusive market, the jury found for defendant, and as there is ample evidence in the record upon which to so find, this question under a familiar rule of law is here foreclosed. The facts showed that to the time of defendant's discovery of the breach, he had purchased from time to time a large amount of plaintiff's merchandise consisting of a special line of ladies' ready to wear coats and dresses, on which account payments had been made, and that at the time of defendant's discovery of the breach on February 21, 1924, a part of the account sued on was not then due. Upon calling plaintiff's attention to the breach, plaintiff in effect admitted the truth thereof, and advised that its agent would call on defendant and fully explain the transaction which defendant complained of as constituting the breach. Defendant waited a reasonable time for the appearance of plaintiff's agent, and within 20 days of his complaint returned the merchandise on hand, and made a tender of the difference between the invoice price of the returned merchandise and the account sued on.

By the breach plaintiff took away the inducement to defendant to continue as a dealer in plaintiff's merchandise, that of an exclusive market at his place of business which was the basis of the contract, and thus by its conduct evinced an intention to be no longer bound by the terms of the agreement. This, we think, went to the main purpose of the contract, and gave defendant the right to treat the same as at an end.

Bride v. Riffe, 93 Neb. 355, 140 N. W. 639, was a case directly in point with respect to the facts and circumstances of the case in hand. There the seller sued to recover for goods sold and delivered which consisted of a special line and design of jewelry. The defense was predicated on the breach of the contract for an exclusive market. It was held:

"One who is induced to become the vendee of a special line of merchandise for sale at retail, under an agreement with a wholesale vendor that he shall have the exclusive sale of such special line of merchandise in the city where he is engaged in business, may, upon learning that the vendor has, without his knowledge or consent, sold merchandise of the same special line to a competitor for resale in such city, rescind the contract and return the merchandise so purchased; and in such a case the vendor will not be heard to say that deception was immaterial because no real injury resulted therefrom."

In the opinion the court said:

"The jury, as we think upon sufficient evidence, found the issues in favor of defendant. This verdict settles the question in favor of defendant that the goods were purchased by him under an express agreement, that, in purchasing this special line of goods, he was to have the exclusive sale of that line in the city of Hastings. This being true, defendant had a perfect right upon discovery of the fact that he had not been

given such exclusive sale, to rescind the contract. He exercised that right immediately by notifying plaintiffs of his election to rescind and by returning all of the goods purchased. He had this right regardless of the question as to whether he had suffered any real injury by reason of the deception practiced upon him. MacLaren v. Cochran, 44 Minn. 225."

German-American Monogram Mfgs. v. Johnson, 133 Tenn. 571, 182 S. W. 595, was a like case, the merchandise consisting of certain monogram designs sold upon the express representation that the defendant should have the exclusive sale of such merchandise in the city of his establishment. The defense was predicated on the grounds that the account was not a just claim, fraudulent and void, and without due consideration, which went to the breach of the contract for an exclusive market by the seller. The court held:

"Where plaintiff, selling goods to defendant, represented that defendant was to handle the goods exclusively in his city, without which inducement the contract would not have been made, defendant's (evidently meaning plaintiff) subsequent sale of the same goods to another dealer in that city was a breach of a material part of the contract, so that, regardless of whether there was fraud, the buyer was entitled to rescind."

Adverting to the general rule, citing 35 Cyc. 135, the court said:

"As a general statement of the law upon this subject, a buyer may be discharged if there is a breach of the contract by the seller in some substantial particular which goes to its essence and renders the defaulting party incapable of performance or makes it impossible for the defaulting party to carry it out as intended"

—and further, quoting the language of section 2026, Elliott on Contracts, to wit:

"On breach of a contract, the party not in default generally has the right to elect whether to terminate the contract or not, and he may exercise this right where such election does not increase the damages resulting from the breach."

Concluding the discussion, the court used this language:

"We are of the opinion that the verdict of the jury can well be sustained upon the ground that the representation made by the agent of plaintiff that the defendant should have the exclusive sale of the goods sold to him in the city of Nashville was a part of the engagement entered into between the parties, and that, regardless of whether there was fraud, it was such material part of the contract as that the future breach

thereof would entitle the defendant to a rescission.

"It appears that, as soon as the defendant ascertained the fact that plaintiff had sold the same goods to another dealer in the city, he promptly offered to rescind and immediately shipped the goods back to plaintiff, except a small amount which he had sold. For the portion sold he paid the plaintiff."

Koener v. Henn, 8 App. Div. 602, 40 N. Y. S. 1021, cited in Tennessee case, was a case to recover for a certain line of pictures sold under representation of an exclusive market. It was held:

"A breach by the seller of a provision of the contract that he will not for four months, sell similar goods to any person other than defendant, is a ground for the rescission of the contract by the buyer, though the stipulated time for the payment expired within the four months."

In thus disposing of the case, the court observed:

"The defense is founded upon the charge, supported by the evidence, that the plaintiff's did, within such time, sell similar dog pictures to another person in the city of Buffalo. Thereupon defendant called the attention of plaintiffs to such violation of the agreement * * * and that the 25,000 dog pictures so delivered were set aside for the plaintiffs, and held subject to their order. It appears that they were so set aside and held. This was within 30 days after the property had been delivered by the plaintiffs to the defendant, and before this action was brought to recover the price. The question presented is whether or not the breach of the contract on the part of the plaintiffs enabled the defendant to rescind the agreement, and thus furnish a defense. The stipulated time for payment by the defendant expired before that within which the plaintiffs were required by the terms of the contract to observe their stipulation not to sell to any person in Buffalo other than the defendant. That condition or provision cannot, therefore, be treated as a condition precedent to the right of action to recover the price. Tipton v. Feitner, 20 N. Y. 423; DeKay v. Bliss, 120 N. Y. 91, 24 N. E. 300. It is, however, a general rule that an executory agreement which is entire may, upon a substantial breach by one of the parties, be rescinded for that reason by the other, when it can be done in toto, and the parties put in statu quo. Weaver v. Bentley, 1 Caines, 47; Meade v. Insurance Co., 51 How. 1; Giles v. Edwards, 7 Term, R. 181; Hunt v. Silk, 5 East. 449. In the present case the contract was executory, and part of the

consideration of the purchase was the plaintiffs' stipulation that they would not, within such term, give opportunity to any other person in the city of Buffalo, by sale to him, to come in competition with the defendant in the use of the advertising novelty in question. The plaintiffs disabled themselves from performance on their part of the contract in a respect which may have been deemed material to the beneficial purpose of the purchase. And when the plaintiffs did, by such sale to another, deny to the defendant the benefit of that provision, he was at liberty to treat such sale as a substantial breach of the contract, prejudicial to him, and on that ground to rescind it, if he was then able to restore to plaintiffs fully what he had received from them, and thus place them in the same situation in respect to the subject of the sale in which they were at and immediately before the time of the delivery of the goods."

In our opinion these cases announce the correct rule that should be applied to the class of contracts here involved. Thereunder the binding force of mutual business undertakings in their entirety would find that security of recognition and observance by the parties thereto, which, as is here evidenced, are the constant need of trade and commerce to assure continued commercial integrity. Thereto we make judicial commitment rather than to the rule of the cases relied on by plaintiff wherein the circumstances were similar to those of the case at bar. Tested thereby it becomes quite clear that the instruction complained of fairly advised the jury of the law of the case, that is to say, if the jury, under the issues framed by the pleadings and the evidence, found the facts for defendant, the breach on which the defense was predicated went to the essence of the contract between the parties and took away the inducement of defendant to continue in the sale of plaintiff's merchandise, and clearly evinced plaintiff's intention to be no longer bound thereby, which justified defendant to act in rescission upon discovery of the breach, whereunder his return of the merchandise on hand and his tender of payment of the difference between the invoice price thereof and the account sued on sufficiently answered the rules of rescission as expressed by the relevant law of the state

The judgment of the district court is therefore affirmed.

BENNETT, REID, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.