# IN RE: JEFFREY L.

[No. 371, September Term, 1981.]

*Decided December 4, 1981.*

The cause was argued before LOWE, MASON and MacDANIEL, JJ.

*Michael R. Malloy, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Jane Pilliod, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Melanie Fishkind, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

If strict compliance with legislatively or judicially enacted procedural protections for defendants wastes the valuable time of overburdened courts (as most taxpayers and even trial judges protest), repetition is a far greater waste when requirements are ignored and, after an appeal, compliance is compelled nonetheless. Probably the most hackneyed phrase in Maryland appellate records is the admonition to both bench and bar that rules, by whomever enacted, are "not guides to the practice of law but precise rubrics 'established to promote the orderly and efficient administration of justice and [that they] are to be read and followed.' " *Isen v. Phoenix Assurance Co.,* 259 Md. 564, 570 (1970), quoting *Brown v. Fraley,* 222 Md. 480, 483 (1960). Judicial novices may upon occasion be forgiven, but even they cannot be excused when an individual's procedural rights have been denied him.

The appeal before us is from the Circuit Court for Prince George's County, sitting as a Juvenile Court. It arose after an adjudicatory hearing during which a plea bargain was struck between the State and the juvenile. Under the agreement, the juvenile would admit to shoplifting and malicious destruction of property, for which he would make restitution. Other counts would be stetted or nol prossed.

The judge advised the youth before him of the nature of the charges and the trial rights that he was giving up. He apprised him of the restitution responsibility and the likelihood of commitment to a training school, hospital, or other institution until he was twenty-one years of age. Generally, the judge followed the mandated catechisms, and specifically, he advised the youth that there was a good chance he would be committed to Crownsville Adolescent Unit, a surmise which the judge expressly made from a

report he had received based on the juvenile's prehearing confinement at Boys Village.

> "THE COURT: The chances are very good, based on the report the court has before it from Boy's Village, that I will commit you to Crownsville. Do you understand that?"

The report to which the court alluded was obviously one made pursuant to Md. Cts. & Jud. Proc. Code Ann. (1974, 1980 Repl. Vol.), § 3-818. That section provides that after a petition has been filed, the court may direct an appropriate agency to make a study of the child relevant to the disposition of the case. As part of the study, the child or its parents may be examined mentally or physically by a professionally qualified person. The report of the study is admissible at a waiver or disposition hearing, but not at an adjudicatory hearing.

The statute further provides that the attorney for each party has the right to inspect the report "prior to its presentation to the court", in order to determine whether its findings should be challenged or impeached, as well as to provide for the presentation of evidence with respect to the study. Md. Rule 905 further implements § 3-818, providing procedural detail. The detailed procedure relating to the presentation of studies or reports under § 3-818 seems a bit at odds with the statutory requirement that counsel see the report prior to its presentation to the court. The rule provides that the study or report

> "shall be furnished by the court to counsel for the parties when received by the court . . . ."

The rule also mandates that counsel must receive it not less than two days before the hearing (*i.e.,* waiver or disposition) at which the results of the examination will be offered in evidence.

It is apparent in this case that the statute and the rule have been violated. Prior to any formal adjudication of delinquency, the court acknowledged that it had considered, and was still considering, the contents of such a study.

Furthermore, it is clear from the record that the accused's counsel had *never* received a copy of the report although the judge was considering disposition of the case. The judge asked counsel:

> "Do you want to send him up for evaluation or just commit him? "

To which counsel replied,

> "I didn't see the Boy's Village report, so I don't know how severe it is,"

clearly indicating that neither the statute nor the rule had been complied with.

The Juvenile Causes statute contemplates a "separate disposition hearing" within thirty days (Md. Rule 915) after an adjudicatory hearing, "unless the petition is dismissed or unless such hearing is waived *in writing* by all of the parties." Md. Cts. & Jud. Proc. Code Ann. (1974, 1980 Repl. Vol., 1981 Cum. Supp.), § 3-820 (a) (emphasis added). Although the disposition hearing may be held on the same day as the adjudicatory hearing, it may only be done if the notice of the disposition hearing prescribed by the Rules *(see* Md. Rule 910 c) "is waived on the record by all of the parties". § 3-820 (a).

In the case before us, the record does not reveal compliance with the procedure to effect a waiver of the disposition hearing, or even waiver of the notice to permit a disposition hearing to proceed on that day. After advising the juvenile of the consequences of his bargain, but before any formal adjudication of delinquency, see *In re Roberts,* 13 Md. App. 644 (1971), the court appeared to be proceeding toward some sort of a disposition of the matter:

> "Very well, then. In these cases, we will, at this time . . .",

when the defense counsel interrupted by saying simply:

> "Waive disposition".

By arguing that the defense counsel "[q]uite obviously" did not intend to waive a disposition hearing, the State's brief seemingly concedes failure to comply with the joint written waiver requirement, if such had been the intent.

> "From the context and subsequent events, it is clear that defense counsel meant that he was waiving notice of the disposition hearing, a procedure which under the Rule would allow the disposition hearing to be held immediately. Quite obviously, he was not by that statement, totally waiving a disposition hearing because he made no objection when the judge proceeded to disposition of the matter immediately thereafter. If by 'Waive disposition' he had meant that no disposition hearing was to be held, he certainly would have registered disapproval of some sort at the time disposition was made. The court was correct in proceeding as it did, and obviously did so with the acquiescence of both defense counsel and the State's Attorney."

Even accepting that assumption, we fail to see conformity with the requirement that waiver of notice be "by all of the parties" and that it show "on the record". The statute does not permit us to infer a waiver from silent acquiescence by one party. That is not a waiver by that party "on the record".

But addressing such argument distracts us from the real issue. It is of no consequence whether appellant's counsel sought to waive the notice or the hearing. The fact remains that there was no hearing and there was no written waiver of a hearing. After advising the juvenile of the nature and consequences of his plea agreement, the judge posed the question to counsel we noted above, *i.e.*, whether counsel preferred evaluation or commitment. After counsel replied that he had not seen the Boys Village Report, the judge proceeded to dispose of the case peremptorily.

> "We will, at this time, commit you — find as a fact that you are in need of care and treatment in these two cases, commit you to the Secretary of the

> Department of Health & Mental Hygiene for appropriate placement at the appropriate mental health facility, Crownsville Adolescent Unit, not to be released without the court's permission. They will provide us with a report in about sixty days. Meanwhile, if they want to move you to some drug detoxification unit, they will be able to do that also."

He did not inform the defendant of his right to allocution personally and through counsel, nor did he afford an opportunity to either to exercise the right. Md. Rule 772 d.

Because it was only one year ago that we pointed out that Md. Rule 772 d was applicable in juvenile proceedings (*In re Virgil M.,* 46 Md. App. 654 (1980)), an overburdened trial judge may be forgiven for his failure to inform the juvenile of his right to allocution, but due to the importance we attached to that right, *id.* at 657-659, he may not be excused from doing so. Nor is there room for forgiveness when the opportunity to allocute was not even granted the juvenile's advocate, despite his failure to complain. Had this been the only error, however, it may well have been waived by failure to complain. *Logan v. State,* 289 Md. 460, 487-488 (1981); *Covington v. State,* 282 Md. 540 (1978).

Finally, the State's brief reluctantly concedes procedural error,[1] that the judge's statement does not conform to the requirements of Md. Rule 915. Subsection b of that rule requires that if there is placement of the child outside the home,

> "the judge *shall* announce in open court and on the record or shall *prepare* and file with the clerk, a

---

[1]. At argument the State readily conceded that more substantial error had been committed. We assume the concession was that no disposition hearing was held because the attempted oral waiver by defense counsel was ineffective. Since the scope of the concession, like that of the waiver, was somewhat obscure, we feel compelled to respond to the brief rather than possibly to interpret the concession beyond its intended purpose. Repeated reminders to bench and bar may have the Pavlovian result of effecting compliance.

brief statement of the reasons why that placement is necessary." (Emphasis added).

When, as here, a child is placed in the custody of the Department of Mental Hygiene for inpatient care at a State mental hospital, subsection b of Rule 915, as well as § 3-820 (f), spell out the prerequisites of such commitment, based upon clear and convincing evidence. If the rule is not clear that such findings must be expressed on the record, the statute certainly is:

> "(f) The court may not commit a child to the custody of the Department of Health and Mental Hygiene for inpatient care and treatment in a State mental hospital unless the court finds on the record based upon clear and convincing evidence that:
> (1) The child has a mental disorder;
> (2) The child needs inpatient medical care or treatment for the protection of himself or others;
> (3) The child is unable or unwilling to be voluntarily admitted to such facility; and
> (4) There is no less restrictive form of intervention available which is consistent with the child's condition and welfare."

Should we be disposed to forgive (not excuse) ignorance of that legislative act — effective eight months before trial in this case — we dare not. The Maryland Court of Appeals emphasized its importance by duplicating it on April 18, 1980 as its Rule 915 c, to be effective at the same time as the statute. The significance of such simultaneous stamps of imprimatur pointedly achieved by two such august assemblages cannot be lost upon us.

At the time of argument on this appeal, the State, upon reflection, conceded not merely the § 3-820 (f) error but seemingly the remainder of the conglomerate. It is small wonder that the Court of Appeals has become increasingly annoyed at those on bench or at bar who seem to ignore its rules. *Pride Mark Realty v. Mullins,* 30 Md. App. 497, 506-509, *cert. denied,* 278 Md. 730 (1976). Legislators

become equally chagrined when courts or counsel fail to comply with their statutory mandates, but they are unable to express their pique as directly as that of the Court (although they often express it more effectively). We hasten to note, however, that while we can react only to the errors of a trial judge, counsel in a case such as this is an equally responsible officer of the court charged with compliance to rule and law. Counsel for both parties owe a responsibility, not only to their clients, but to the court as well to see that procedural niceties mandated by rule or statute are complied with. Especially when dealing with juveniles, short cuts may only be taken by following prescribed paths.

> *Judgment reversed; case remanded for re-disposition.*
> *Costs not to be reallocated.*
> *Md. Rule 1082f.*