No. 17,152.

LOCKWOOD GRADER CORPORATION ET AL. *v.* BOCKHAUS.
(270 P. [2d] 193)

Decided April 26, 1954.

Mr. GORDON H. ROWE, JR., Mr. WILLIAM H. HEISS, for plaintiffs in error.

Messrs. MOSES & DE SOUCHET, for defendant in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the court.

DECEMBER 31, 1951 Lockwood Grader Corporation filed its complaint against Ralph L. Bockhaus and the Public Trustee of Rio Grande county, Colorado for foreclosure of a trust deed on real estate executed by Bockhaus, defendant in error, to secure his promissory note dated August 18, 1950, in favor of Lockwood Grader Corporation, on which an alleged balance of some $9,600 and interest was past due. Plaintiff in said action also asked for the appointment of a receiver of the real estate

described in the trust deed, and the application of the proceeds of the rental thereof during foreclosure on the indebtedness plaintiff claimed was due it from Bockhaus. The Public Trustee filed a disclaimer.

January 15, 1952 plaintiff filed its motion for the appointment of a receiver. In February, 1952 a receiver was appointed and he notified Bockhaus that possession of the premises involved would be demanded on March 5, 1952. Bockhaus offered to pay $200 per month as rental for the property, and the equipment therein contained, and certain lesser amounts in the event the fixtures and machinery on said premises, also covered by the trust deed, were sold. Plaintiff offered to pay the receiver $260 per month as rental for the real estate and equipment until the sheriff's sale of the chattels, and $125 per month thereafter during the pendency of the receivership. These offers were submitted to the court and, after hearing, the court directed the receiver to rent the premises to plaintiff on the terms by it proposed. Lockwood Grader Corporation was organized under the laws of the State of Nebraska, and had done business in Colorado for many years prior to the date of the trust deed which it sought to foreclose. Lockwood Graders of Colorado filed its articles of incorporation as a Colorado corporation on February 28, 1952. Lyle F. Enyeart, T. J. Lockwood and his wife Margaret Lockwood were the incorporators.

April 26, 1952 Lockwood Graders of Colorado, a Colorado Corporation, T. J. Lockwood and Lyle F. Enyeart were, on motion of Counsel for Bockhaus, made parties to the action. We will herein refer to them by name or as plaintiffs in error. On the same date Bockhaus filed an answer and counterclaim in which the execution of the note and the deed of trust were admitted. By way of counterclaim against Lockwood Grader Corporation, Lockwood Graders of Colorado, T. J. Lockwood and Lyle F. Enyeart, Bockhaus alleged that he was the owner and operator of Bockhaus Manufacturing and Supply Com-

pany, engaged in the manufacture, sale and distribution of farm machinery in and around Monte Vista, Colorado, and had been so engaged for nine years, and that the Nebraska Corporation and the Colorado Corporation are similarly engaged in the manufacture, sale, and distribution of potato processing and handling machinery in said territory; that Enyeart was, and is, the manager of plaintiff's corporation in Monte Vista; that T. J. Lockwood was, and is, the majority stockholder, director and president of both corporations; and that Enyeart and Lockwood "have at all times herein mentioned held like offices and interests in Lockwood Graders of Colorado."

Bockhaus then alleged that plaintiff, Lockwood Graders of Colorado, T. J. Lockwood and Lyle F. Enyeart "individually and as officers of said corporation" have fraudulently, unlawfully and maliciously conspired together to force him out of business, and that pursuant to such conspiracy they falsely and maliciously represented and stated to people in the Monte Vista area that Bockhaus "was going, or had gone, out of business for financial reasons"; that said conspirators discriminated against Bockhaus in the sale of parts of machinery and had made public certain confidential negotiations between plaintiff and defendant; that thereby defendant's business, credit and reputation was damaged in the sum of $5,000 and that "the injuries complained of by defendant have been attended by circumstances showing a wanton or reckless disregard of defendant's rights and feelings, and that defendant is entitled to exemplary damages in the amount of $5,000."

Lockwood Grader Corporation, Lockwood Graders of Colorado and T. J. Lockwood filed their answer to the counterclaim and denied all allegations of conspiracy and the elements of damage set forth therein. Enyeart, in his separate answer to the counterclaim, alleged that all his dealings with defendant were "solely as an employee of said corporation and under the express * * * orders of the defendant, T. J. Lockwood;" that he sev-

ered his connection with said corporation on June 7, 1952, and that he "did not conspire with, consult or advise with said T. J. Lockwood in or about any matter and thing relating to defendant Bockhaus."

Trial of the issues on the counterclaim was to a jury, and after the introduction of defendant's evidence on his counterclaim it was dismissed as to Enyeart, with the consent of counsel for Bockhaus, because the evidence "was insufficient to establish any conspiracy or connection of said Lyle F. Enyeart with the alleged wrongful acts complained of by defendant Bockhaus." The issue on plaintiff's complaint for foreclosure of the trust deed was withdrawn from consideration of the jury and determined by the court.

The jury, by its verdict, assessed damages in favor of Bockhaus on his counterclaim against Lockwood Grader Corporation, Lockwood Graders of Colorado, and T. J. Lockwood, as follows: Compensatory damages $500.00, exemplary damages $3,000.00. Motion for new trial was overruled and judgment was entered on the verdict. Judgment was entered in favor of plaintiff and against Bockhaus on his note in the sum of $11,198.73, and a decree foreclosing the deed of trust securing the note was duly entered by the court. The Bockhaus property was ordered sold to satisfy the judgment, and after sale thereof by the sheriff, pursuant to the decree, a deficiency judgment was rendered against Bockhaus.

From the judgment against them on the counterclaim, plaintiffs in error bring the cause to this Court by writ of error.

Lockwood, Enyeart and Bockhaus were the only witnesses who testified in the action.

We quote the following from the testimony of Bockhaus: "Q. Now you are not suggesting or claiming are you that the commencement of this foreclosure suit was illegal or fraudulent or malicious are you? A. No, I would not say there was anything fraudulent about it. Q. You owed the money? A. That is right. Q. And that

foreclosure proceeding was general common knowledge in the community was it not? A. Well, that I could not say. Q. At least it was not a secret? A. No. Q. How did this account occur. A. Through equipment and parts bought. Q. In other words you bought and never paid for it after you sold it is that correct? A. I assume it is, yes. Q. In fact you were operating on his (Lockwood's) money is that not true. A. Yes, I believe it is."

The gravemen of Bockhaus' counterclaim was that Enyeart in February, 1952 informed a meeting of potato shippers that Bockhaus was about to go out of business and go to work for Lockwood, and that Lockwood was about to take over the business of Bockhaus. Negotiations to this effect had been going on between Bockhaus and Lockwood. It is undisputed that Bockhaus wanted to go to work for Lockwood, but these negotiations were unsuccessful. Enyeart at the potato shippers' meeting read Exhibit "A" which is a letter written on stationery of Lockwood Graders, dated at Monte Vista, Colorado, February 16, 1952, addressed to "Bockhous Mfg. Co." The following is an *exact* copy of Exhibit "A":

"After due consideration and looking into all of the details of the case following is how it is summed up.

"This account was accumulated from the Lockwood Grader Co. of Gering settlement was made to years ago, and the balance was placed on Mortgage, and that amount was taken out of the Corp. and placed in personal account. We do not feel that under any conditions will this new Corp. of Colo. take over the repayment of that account on a long term bases or on commissions.

"As I stated when talking with you 30 days ago the account would have to be settled before could consider working here. The request for 2% of Gross sales of this plant here is completely unreasonable, and can not be considered with fairness to our other workmen or the customers.

"In making a check to day find that you have so many

debitors, that there would be garnishes on your wages and we would have no end of trouble. At this time I do not know what is the best plan for all concerned, the customers you and us.

Sincerely yours, T. J. Lockwood."

Lockwood testified that he did not instruct Enyeart to read this letter at the meeting, but left the matter to Enyeart's discretion.

When Enyeart was called as a witness by Bockhaus, he testified regarding his reading Exhibit "A" at the meeting of the potato shippers, as follows: "Q. Did he (Lockwood) tell you what the purpose was? A. Yes. Q. What? A. That he believed that all concerned, in other words he didn't believe there should be any secret about one thing and that in all fairness to everybody concerned, himself, the shippers and Mr. Bockhaus they should know what was going on; that is the statement he made to me."

The only alleged conspirators were Lockwood, Enyeart and two corporations. One of these corporations was not in existence until June, 1952, some three months after the counterclaim was filed. During the trial Bockhaus admitted that Enyeart was not a conspirator, and the court dismissed him as a defendant under the Bockhaus counterclaim. There is neither allegation nor proof that any officer or employee of either corporation, other than Lockwood, was in any way involved. Counsel for plaintiffs in error contend that a conspiracy cannot be shown by acts of one person, no matter how many corporations he represents.

■ Recovery of damages in a civil action for conspiracy, except in situations not here applicable, is not based on the conspiracy itself, but on damages resulting from an overt act or acts of one or more of the defendants, resulting from the conspiracy. *Meeks v. City of Loveland*, 85 Colo. 346, 276 Pac. 30; *Pullen v. Headberg*, 53 Colo. 502, 127 Pac. 954.

■ To constitute a civil conspiracy there must be:

(1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. The burden of proving these essentials by a preponderance of the evidence is upon him who asserts the claim under such circumstances.

Under the record before us, Lockwood was the only person who could possibly have acted for either of the two corporations. The record is silent as to whether he consulted with any other officer or official of either corporation. Without that proof, no conspiracy was proven, for one person cannot conspire with himself. *United States v. Santa Rita Store Co.*, 16 N.M. 3, 113 Pac. 620, 11 Am. Jur. 544, 15 C.J.S. 997, 5 R.C.L. 1065; *Union Pacific Coal Co. v. United States*, 173 Fed. 737, 97 C.C.A. 578.

Over objection of counsel for Lockwood and his companies, the following paragraphs of a letter dated February 20, 1953 from Lockwood and addressed to "All Branches" of his organization was received in evidence as tending to impeach the witness, T. J. Lockwood: "Receiver should be put in to-day, and will lock up his place of business, and give him no more parts at 20% discount. Expect sale in 6 weeks. Lyle feels he will take out bankruptcy. Regardless of what is done, we will have to send men to Monte Vista to help take care of warehouse business. Expect to send Ray or Dale to handle that end of business until Lyle gets man set, will be hard job. It will be on special work for warehouse to rebuilt both our and Bockhaus equipment. Bockhaus will either leave country and we will need help to take care of customers or he will try to get little shop and start over again, either way, we will put man in reduce price if necessary and take business, as tried to help him two years ago to get on his own feet."

The object of the conspiracy as alleged in the Bockhaus counterclaim was to put Bockhaus out of business.

As we read this record, he not only failed to sustain the burden of proof resting upon him, but the facts in evidence disprove that object.

Lockwood, when called as an adverse witness by counsel for Bockhaus, testified: "Q. And did you have any interest or desire to put Bockhaus out of business? A. No. Q. Would you have lowered prices in order to drive him out of business? A. We have never done that. Q. Do you have any intention of doing that in this case? A. No. Q. Did you ever have any intention of making it impossible for Mr. Bockhaus to redeem from the foreclosure sale in the event this deed of trust was foreclosed? A. Question again. Q. Did you ever have any intention of making it impossible for Mr. Bockhaus to redeem from foreclosure sale in the event this deed of trust was foreclosed? A. No. Q. What was your interest in this matter, just to collect the indebtedness you were interested in? A. Yes. Q. And you say you never had any intention of trying to force Bockhaus out of business? A. No. Out (Our) intention was to collect the debt. Q. Answer the question? A. No, we had no intention of putting him out of business or we would have done it two or three years before."

Under examination by his counsel, Lockwood testified that his concerns would not have profited by putting Bockhaus out of business because "we couldn't take care of our business as it was." He also testified that his companies had never refused to sell Bockhaus any of its products.

It is undenied that the indebtedness upon which plaintiff sued was incurred in 1945, and then amounted to some $19,000. During the intervening period between 1945 and the date of the deed of trust he had paid only about $5,000 on this debt. Lockwood was under no duty to keep extending the time of payment of this debt to enable Bockhaus to stay in business, but he did so. He was under no obligation to furnish his business rival the parts that enabled Bockhaus to manufacture machinery

to be sold in competition with plaintiff. He not only did so, but the record shows that plaintiff allowed Bockhaus larger discounts than those given other dealers, even after this suit was started.

Bockhaus testified that in March or April, 1950, in a private conversation between himself and Lockwood, the latter stated that Bockhaus "might as well turn over the key to the place to him and save a lot of trouble because he was going to take over any how." This conversation was denied by Lockwood. This remark, if made, was uttered after Lockwood had tried without success to collect the money admittedly due his corporation. On August 18th following this alleged conversation, Lockwood extended the debt in writing. This action in extending the indebtedness negatives any idea that Lockwood was bent on putting Bockhaus out of business.

When Lockwood declined to give Bockhaus further discounts on parts and machinery he desired to purchase, he was clearly within his legal rights. There was no contract between the parties regarding such discounts. The evidence shows that Bockhaus was not the only person who was thus dealt with in the Monte Vista area. Lockwood testified that he discontinued the discounts because Bockhaus had given plaintiff a check which was not paid by the bank on presentation.

Bockhaus testified that if he had been given the discounts which he formerly enjoyed, they would have approximated $500. The actual basis of his computation is somewhat obscure. He testified: "Q. And what is the total volume of discounts which were refused? A. Approximately $500.00."

Evidence on the part of Lockwood was to the effect that the total discount not allowed was only about $60.

We are inclined to think that the verdict of actual damages in the sum of $500 was predicated on the conclusion of the jury that because Lockwood had helped Bockhaus so many times and over so many years; al-

lowed him to retain money from sale of Lockwood equipment and machinery as working capital for a business competing with that of plaintiff; had extended him credit for years on short term purchases, and had given defendant more discount than most dealers, plaintiff was under obligation to continue such discounts after Bookhaus had shown, at least in the considered opinion of Lockwood, that he was not worthy of that consideration.

With the exception of one or two inconsequential matters, all of the things which Bockhaus now asserts damaged him, occurred after the instant action was commenced by Lockwood.

The portion of Exhibit "B" which was received in evidence, was so received only for the purpose of impeachment of the testimony given by Lockwood, and to test his credibility as a witness. We fail to see where his testimony was impeached by this exhibit.

The trial judge observed during the trial "it seems to the Court that the acts should be shown first, then the things that lead (led) up to them, because if you had a thousand plans if you don't carry them out they would not be injurious to the party." This observation was made with reference to Exhibit "B." The trial court also observed "There is nothing here in the mind of the court that indicates a conspiracy. Reducing prices, taking business is not necessarily a conspiracy or intent so to do an unlawful act."

Thereupon the trial court admitted in evidence the paragraph from Exhibit "B" above set forth, with this observation: "Now on the sole purpose of attacking the credibility of the witness this paragraph may be admitted but the Court wants to announce right here that the jury is going to get an extremely strong instruction on that."

It is not contended that there is anything in either Exhibit "A" or "B" which is libelous per se. Bockhaus attributed his loss, if any, to the litigation in which he was engaged. He testified as follows: "Q. Do you know

of a single piece of business you lost as a result of this letter being read at the meeting? A. I could not pin it down to a certain piece, no. Q. I mean by this you can't put your finger on a single piece of business which you lost which you know is the result of reading this letter? A. Not a particular item, no."

Bockhaus admitted on the stand that at the time the letter was read there was a judgment against him in favor of one of his creditors designated in the record as Blue Flame. He was asked: "Q. They could have garnisheed on that judgment could they not?" To which Bockhaus answered: "I suppose they could have, I had not paid it."

We find nothing in the record that indicates Lockwood made any false statements, and none were made by his direction.

■ Loss of profits from the destruction or interruption of an established business may, in a proper case, be recovered if the amount of the actual loss is rendered reasonably certain by competent proof. 25 C.J.S. 518. Proof of gross receipts standing alone is not sufficient. Without proof of profits there is no proof of damages.

Bockhaus' claim for damages rests entirely on his own testimony. It was too speculative to sustain the burden of proof which rested upon him. In an attempt to show a loss of business, Bockhaus used a paper which he claimed showed that during the months of December, 1951 to and including April, 1952, his gross sales were less than they had been in the same five months during the preceding year. This paper was said to be from an auditor's report; was not supported by any books; was not prepared by Bockhaus; but was admittedly the product of someone who was not called as a witness. In connection therewith the witness could not show his exact expense or highest profits for these monthly periods. The auditor's report was not produced.

■ We conclude that Bockhaus' claim for damages based on loss of profits, was not supported by the evid-

ence. What he attempted to show was too uncertain, conjectural and speculative to form a proper basis for a verdict.

Over objection of counsel for Lockwood, Bockhaus was permitted to testify that his gross sales for the month of December, 1951; January, February, March and April, 1952, were some $9,000 less than during the same period in 1950-51; that his net profit was 30%; and he was allowed to state that this loss of profit amounted to $2,961.43.

Bockhaus, on cross-examination, stated that his estimate of 30% profit was based on an auditor's report "taken over a period of months." He was asked: "Q. That 30% figure was for a short time is that correct? A. Six or seven months. Q. Did you do it in 1951? A. That I could not say without going back and getting the report. Q. If I understand you correctly then in 1949 you did not make 30% profit, in 1950 you didn't make 30% profit, in 1951 you don't know, is that right? A. That is right. Q. Did you make it in 1948? A. No. Q. In other words only once in this whole period you made it for six months? A. I said it was taken from one of the reports, the others I don't know."

Nowhere in the evidence did defendant in error show, or attempt to show, what his expenses of operation were, or how he arrived at his conclusion concerning the 30% profits he claimed he would have made.

From the record before us, there appears nothing to support a verdict of actual damages as the proximate result of any act of Lockwood. Hence, the motion of counsel for Lockwood and his companies for a directed verdict in their favor, should have been granted. This being our conclusion, it becomes unnecessary for us to consider claimed errors in the instructions and rulings on admissibility of evidence.

Having concluded that Bockhaus was not entitled to recover actual damages, it follows that he could not recover exemplary damages. Because of the increasing

number of cases in which exemplary damages are demanded, we here direct attention to our rulings in *French v. Deane,* 19 Colo. 504, 36 Pac. 609; *Gray v. Linton,* 38 Colo. 175, 88 Pac. 749; *Starkey v. Dameron,* 92 Colo. 420, 21 P. (2d) 1112; *Barnes v. Lehman,* 118 Colo. 161, 193 P. (2d) 273; and *Ark Valley Alfalfa Mills, Inc. v. Day,* 128 Colo. 436, 263 P. (2d) 815.

The judgment entered on the counterclaim is reversed and the cause remanded with directions that the said judgment be vacated and the counterclaim dismissed. It is so ordered.