**UNITED STATES of America**

v.

**Robert J. CARROLL and Sheba Bracelets, Inc., Defendants.**

United States District Court
S. D. New York.

Sept. 21, 1956.

Paul W. Williams, U. S. Atty., for the Southern Dist. of New York, New York City, for United States of America, Robert K. Ruskin, Asst. U. S. Atty., New Rochelle, N. Y., of counsel.

Palmer, Masia & Palmer, New York City, for defendants Robert J. Carroll and Sheba Bracelets, Inc., Archibald Palmer, New York City, of counsel.

PALMIERI, District Judge.

In August, 1952, a grand jury brought an indictment, charging Sheba Bracelets, Inc., Robert Carroll, Samuel Diamant, Louis Fisher and Emil Popper with conspiring to use and acquire gold so as to violate the gold laws. Act Oct. 6, 1917, 40 Stat. 415, as amended, Act Dec. 18, 1941, 55 Stat. 839, 12 U.S.C. 95a (1952), 12 U.S.C.A. § 95a, Exec. Order Aug. 28, 1933, No. 6260, as amended, Exec. Order Jan. 15, 1934, No. 6560, 12 U.S.C.A. § 95a note.[1] It also charged Sheba Brace-

---

1. Section 95a provides:

"(1) During the time of war or during any other period of national emergency declared by the President, the President may, through any agency that he may designate, or otherwise, and under such rules and regulations as he may prescribe, by means of instructions, licenses, or otherwise—

"(A) investigate, regulate, or prohibit any transactions in foreign exchange, transfers of credit or payments between, by, through, or to any banking institution, and the importing, exporting, hoarding, melting, or earmarking of gold or silver coin or bullion, currency or securities,

\* \* \* \* \* \*

by any person, or with respect to any property, subject to the jurisdiction of the United States; \* \* \* and the President shall, in the manner hereinabove provided, require any person to keep a full record of, and to furnish under oath, in the form of reports or otherwise, complete information relative to any act or transaction referred to in this subdivision either before, during, or after the completion thereof, \* \* \* and in any case in which a report could be required, the President may, in the manner hereinabove provided, require the production, or if necessary to the national security or defense, the seizure, of any books of account, · records, contracts, letters, memoranda, or other papers, in the custody or control of such person; and the President may, in the manner hereinabove provided, take other and further measures not inconsistent herewith for the enforcement of this subdivision \* \* \*.

"(3) \* \* \* Whoever willfully violates any of the provisions of this subdivision or of any license, order, rule or regulation issued thereunder, shall, upon conviction, be fined not more than $10,000, or, if a natural person, may be imprisoned for not more than ten years, or both;

lets, Inc. and Carroll with two substantively different misrepresentations made on five different occasions on end-use certificates for semi-processed gold, in violation of Act June 25, 1948, 62 Stat. 749, 18 U.S.C. § 1001 (1952).[2] In 1956, the Government severed its case with respect to Popper and Diamant and with respect to misrepresentations made on three of the above dates. In September of this year the trial began before me.

At the end of the Government's case, it moved to dismiss against the defendant Fisher. This motion was granted. Defendants Carroll and Sheba Bracelets, Inc., (Sheba) then made motions to dismiss the conspiracy count for the reason that the Government had not proved anyone to be conspiring with Carroll, to strike the counts charging misrepresentation for being duplicitous, to suppress the bulk of the Government's evidence on the ground that it stemmed from an illegal search and seizure, and to dismiss all the counts for insufficiency of evidence. I believe that defendants have merit on only the conspiracy count, and, therefore, only this motion will be granted.

## I. Conspiracy

 The evidence has failed to reveal the ownership of Sheba Bracelets, Inc. Because of its dominance by Carroll, and because of the absence of evidence inculpating anybody else in the corporation, a conspiracy, if it is to be found, must be found between the defendant Carroll and the business institution he used to carry out his purposes. Such a finding, it seems, would over-extend the fiction of corporate personality.

and any officer, director, or agent of any corporation who knowingly participates in such violation may be punished by a like fine, imprisonment, or both. As used in this subdivision the term 'person' means an individual, partnership, association, or corporation."

Executive Order No. 6260 provides:

" * * * Sec. 4. Acquisition of Gold Coin and Gold Bullion.—No person other than a Federal Reserve bank shall after the date of this order acquire in the United States any gold coin, gold bullion, or gold certificates except under license therefor issued pursuant to this Executive order, provided that member banks of the Federal Reserve System may accept delivery of such coin, bullion, and certificates for surrender promptly to a Federal Reserve bank, and provided further that persons requiring gold for use in the industry, profession, or art in which they are regularly engaged may replenish their stocks of gold up to an aggregate amount of $100, by acquisitions of gold bullion held under licenses issued under section 5(b), without necessity of obtaining a license for such acquisitions, * * *

* * * * * *

"(c) Gold bullion which the Secretary, or such agency as he may designate, is satisfied is required for legitimate and customary use in industry, profession, or art, by an applicant regularly engaged in such industry, profession, or art, or in the business of furnishing gold therefor.

* * * * * *

"Sec. 5. Holding of gold coin, gold bullion, and gold certificates.—After 30 days from the date of this order no person shall hold in his possession or retain any interest, legal or equitable, in any gold coin, gold bullion, or gold certificates situated in the United States and owned by any person subject to the jurisdiction of the United States, except under license therefor issued pursuant to this Executive order; * * *.

"The Secretary of the Treasury, subject to such further regulations as he may prescribe, shall issue licenses authorizing the holding of—

* * * * * *

"(b) Gold bullion which the Secretary, or such agency as he may designate, is satisfied is required for legitimate and customary use in industry, profession, or art by a person regularly engaged in such industry, profession, or art or in the business of furnishing gold therefor; * * *."

**2.** Section 1001 provides:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

942

It is true that corporations often have been held to be parties to a conspiracy. E. g., Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 1951, 340 U.S. 939, 71 S.Ct. 487, 95 L.Ed. 678; United States v. Yellow Cab Co., 1947, 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010; United States v. MacAndrews & Forbes Co., C.C.S.D.N.Y.1906, 149 F. 823, writ of error dismissed, 1908, 212 U.S. 585, 29 S. Ct. 681, 53 L.Ed. 661. However, in all such cases, one corporation had been in concert with another or with individuals who were not members of the corporation. Cf. Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., supra (affiliated corporations under common ownership and control but holding themselves out as competitors); United States v. Yellow Cab Co., supra (same). The rule does not extend to situations similar to the facts at hand. In Nelson Radio & Supply Co. v. Motorola, Inc., 5 Cir., 1952, 200 F.2d 911, certiorari denied, 1953, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356, the Government brought an action for treble damages under section 1 of the Sherman Act of 1890, 26 Stat. 209, as amended, Act Aug. 17, 1937, 50 Stat. 693, 15 U.S.C. § 1 (1952), 15 U.S.C.A. § 1, in which it charged a corporation with conspiring with its officers, employees, representatives and agents to restrain trade. The court dismissed the action, holding that the acts and states of mind of the corporate agents were imputed to the corporation and that a corporation could not conspire with itself. See also Lockwood Grader Corp. v. Bockhaus, 1954, 129 Colo. 339, 270 P.2d 193 (Civil conspiracy—two corporations and an agent cannot be conspirators where the agent is the sole actor for the two corporations); United States v. Santa Rita Store Co., 1911, 16 N.M. 3, 113 P. 620 (criminal conspiracy —same). But cf. State v. Parker, 1932, 114 Conn. 354, 158 A. 797 (conspiracy to commit fraud among three directors and their corporation); Potter Press v. C. W. Potter, Inc., 1939, 303 Mass. 485, 22 N.E.2d 68 (same, conspiracy to compete unfairly).

The purpose behind not merging conspiracy into a completed crime, as happens with attempts, is separately to penalize and to deter criminal organization, an evil quite apart from the substantive delicts which more likely than not result from such organization. This purpose is served by holding combinations of corporations, and often combinations of directors of one corporation, guilty of conspiracy. Cf. Nelson Radio & Supply Co. v. Motorola, Inc., supra (delict is combination of businesses, not combination of officers of one business). However, the policy does not apply when one man uses a corporate form to carry out his crime. There is no organization and no one other than the sole criminal to deter or to punish. In effect, a man would be more severely punished if he chose to commit his crime by using a corporate form than he would be if he committed it through another business device. If the Government's theory were valid, it would mean that any individual corporate officer, who committed an illegal act within the framework of his corporate duties, also conspired with the corporation to commit that act. I have found no support for such an assertion and neither counsel has cited any. On the contrary, the traditional understanding of the term conspiracy repels such a notion.

This reasoning is particularly true in the case at hand. The Government failed to prove the conspiratorial web among the principals; therefore, it seeks to accomplish the same purpose by breathing life and purpose, and thereby creating the requisite independent personality, into an institution manipulated solely by the individual from whom independence is required for criminality. This, the prosecution cannot do and it must fail on this count.

## II. Duplicity

The two different types of misrepresentations, charged by the grand jury, are as follows: Defendants stated (a) that the industry, profession or art in which they were engaged requiring the

use of gold was manufacturing jewelry, and (b) that the gold which was sold to Sheba Bracelets, Inc. as a result of the above representation would be used by it in the industry, profession or art in which it was regularly engaged. Each of these alleged misrepresentations forms a separate count, and since end-use certificates on two dates are in question, four counts are involved.

I believe that the counts are not duplicitous. Sheba might have been regularly engaged in jewelry manufacturing and yet have acquired gold at a particular date for a purpose other than use in the profession, industry or art in which it was regularly engaged. The converse might also be true. Cf. United States v. Michelson, 2 Cir., 165 F.2d 732, affirmed 1948, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (to "offer" a bribe is a different crime from to "give" a bribe where statute[3] reads, "Whoever shall promise, offer, or give, * * * any money * * *"). The instant statute is sufficiently broad to have each misrepresentation stand as a separate crime (see footnote 2, supra).

### III. Search and Seizure

 Both parties have submitted briefs and affidavits on this issue. I accept the Government affidavits, as mentioned below, as a reliable account of what transpired.

Defendant complains that certain papers were seized and statements taken pursuant to an unauthorized arrest. He further complains that he was kept incommunicado and lengthily questioned between his arrest and arraignment, but not only does this charge lack substantiation, but, as far as I can see, the Government gained nothing from this questioning. The Government attests that no aid to its case resulted from these papers, and since defendant does not indicate anything to the contrary, indeed does not disclose what papers were taken, this part of defendant's motion is denied.

The statement taken, which was introduced in evidence, was to the effect that defendant would not say anything about the gold in which he allegedly was dealing for fear of implicating other people. This was an admission against interest, and since it was made well before Carroll could have been illegally detained, assuming for the moment that he was detained, it is admissible whether or not the arrest was legal. Cf. United States v. Carignan, 1951, 342 U.S. 36, 72 S.Ct. 97, 96 L.Ed. 48; United States v. Mitchell, 1944, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140; United States v. Leviton, 2 Cir., 1951, 193 F.2d 848, certiorari denied, 1952, 343 U.S. 946, 72 S.Ct. 860, 96 L.Ed. 1350 ("subsequent illegality cannot make invalid an already competent confession," at 853); 3 Wigmore on Evidence 851 (1940). The federal policy against admitting confessions procured by illegal detentions is not applicable here. Cf. McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Leyra v. Denno, 1954, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948.

Defendant Carroll also complains that soon after his arrest, federal agents conducted, without a warrant, a search of the premises of Sheba Bracelets, Inc. and seized several papers. (According to Government affidavits, three sales invoice tablets, several Post Office Department return receipt cards and several cancelled checks were taken.) He also complains that books and records of Sheba Bracelets, Inc., which were voluntarily turned over to the Internal Revenue Service in connection with a tax examination, were transferred to the United States Attorney prosecuting this case without Sheba's permission and hence illegally used by the Government.

While it is not clear whether or not defendant corporation, in addition to defendant Carroll, is raising this objection, I will treat the motion as if it were raised separately by both parties. With respect to defendant Carroll, the motion lacks

---

**3.** Now 18 U.S.C. § 201.

merit. It has been held that a corporate officer or stockholder, even if he is the sole officer and stockholder, is not the proper party to raise any corporate right against an illegal search or seizure. E. g., Hale v. Henkel, 1906, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Lagow v. United States, 2 Cir., 159 F.2d 245, certiorari denied, 1946, 331 U.S. 858, 67 S.Ct. 1750, 91 L.Ed. 1865; United States v. American Stevedores, Inc., D.C.S.D.N.Y.1954, 16 F.R.D. 164.

As far as Sheba Bracelets, Inc. is concerned, it is quite clear that it cannot shield itself behind the Fifth Amendment, for this guarantee is not applicable to corporations. E. g., Oklahoma Press Pub. Co. v. Walling, 1946, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614; United States v. White, 1944, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542; Hale v. Henkel, supra. However, it is not clear whether or not corporations have any right under the Fourth Amendment. Many cases have held that the right of privacy under the Fourth Amendment is much less substantial for corporations, if they have such a right at all, than it is for individuals. E. g., United States v. Morton Salt Co., 1950, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401; Oklahoma Press Pub. Co. v. Walling, supra; Hale v. Henkel, supra. The cases stress the general requirement that corporations keep books and records and have them open for governmental inspection whether or not the proper governmental agency has a search warrant. The reason given for this view is the theory that corporations are creations of the state and that they are endowed with public attributes. See cases cited immediately supra. Corporate books and records are even more subject to government scrutiny, it would appear, when they are explicitly made so by legislation, as is the case here. See 31 C.F.R. 54.26 (1949, as amended, 1954); Davis v. United States, 1946, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453; Wilson v. United States, 1911, 221 U.S. 361, 380–381, 31 S.Ct. 538, 55 L.Ed. 771; Bowles v. Insel, 3 Cir., 1945, 148 F.2d 91. But see United States v. Lagow, D.C.S.D.N.Y., 66 F. Supp. 738, affirmed, 2 Cir., 159 F.2d 245, certiorari denied, 1946, 331 U.S. 858, 67 S.Ct. 1750, 91 L.Ed. 1865.

Nevertheless, the Government should have proceeded by obtaining a subpoena. Its failure to do so, however, should not vitiate the information it acquired from the corporate books and records. Jurisdiction in the Treasury agents was clear, 31 C.F.R. 54.26, supra, the inspection was not of countless business papers and of an oppressive type, and probable cause, as for a search warrant, need not have been shown. See United States v. Morton Salt Co., supra; Bowles v. Insel, supra; cf. Federal Trade Commission v. American Tobacco Co., 1924, 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, dragnet and oppressive search, distinguished by United States v. Morton Salt Co., supra 338 U.S. at page 652, 70 S.Ct. at page 368; Gouled v. United States, 1921, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647, search warrant used to explore private home for evidence, explained by Davis v. United States, supra, dissenting opinion 328 U.S. at page 612, 66 S.Ct. at page 1270; Silverthorne Lumber Co. v. United States, 1919, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (subpoena of corporate records vitiated by earlier dragnet and oppressive search and seizure against individual); Takahashi v. United States, 9 Cir., 1944, 143 F.2d 118 (articles seized not contraband articles within meaning of statute authorizing search for same); United States v. Guerrina, D.C.E.D.Pa. 1953, 112 F.Supp. 126 (permission given to Internal Revenue Service to investigate files and statements given to it not a consent to allow agents the right to conduct a thorough search to gather evidence for proposed tax fraud prosecution). The last case, relied on rather heavily by the defendant, is further distinguished by a subsequent opinion in the case, written by the same judge after reargument. D.C.1955, 126 F.Supp. 609. The Court held that a consent to a civil tax investigation was *prima facie* a consent to a criminal tax investigation. See Scanlon v. United States, 1 Cir., 1955, 223 F.2d 382; United States v.

Wolrich, D.C.S.D.N.Y.1954, 119 F.Supp. 538. But see United States v. Wolrich, D.C.S.D.N.Y.1955, 129 F.Supp. 528 (reargument:—consent, which was necessary for examination, obtained by fraud.) But whichever of the Guerrina opinions is law does not matter here, for the Government is proceeding by legislative authority, not express individual consent.[1] This does not mean that the Government has the right to retain the books and records, for the regulation, cited above, authorizes only inspection. However, since the Government could not have gleaned any more information than that derivable from an examination, and since defendant does not seem to be, and does not claim to be prejudiced, in preparing his defense from their custody by the Government, the fact that there was a seizure, as distinguished from a search, does not seem to be significant.

Thus, it would seem, the defendants' motion to suppress should also be denied with respect to the corporate books and records. It may be, however, that the reasoning above does not apply to the items seized by the Government at the time of inspecting the premises of Sheba at least with respect to Sheba Bracelets, Inc. These matters, unlike the books and records, are not the normal matters in which a Treasury agent would be interested. But it is unnecessary to decide whether or not the search and seizure as to these items were reasonable, for there appears to have been a waiver by Sheba of its constitutional right.

There is no dispute that defendant Carroll knew about the taking of these objects five years before this trial began. Furthermore, he was apprised well before the trial began of the transfer of the books and records from the Internal Revenue Service to the United States Attorney's Office. Since Carroll is an officer of, indeed, the most active force behind, Sheba Bracelets, Inc., his knowl-

edge is imputed to the corporation. The only question is whether or not Carroll was aware of the grounds for the motion. See F.R.Crim.P. 41(e), 18 U.S.C. There is a conflict in the affidavits as to whether or not defendants' lawyer, Mr. Palmer, knew that evidence was taken from Sheba. It is clear, however, that Mr. Palmer knew of papers taken from the person of Carroll at the time of the arrest. Moreover, Mr. Palmer's statements before Judge Levet suggest that he had knowledge of the papers, books and records in the hands of the United States Attorney. Thus, it would seem that defendant Sheba was aware of the grounds of the motion. Since I believe that it would not further substantial justice to allow a motion to suppress this evidence in the midst of the trial, I deny this part of the motion.

The motion to suppress is denied.

### IV. Sufficiency of Evidence

I believe that there is sufficient evidence in the case to warrant submitting the counts charging misrepresentation to the jury.

In brief, the evidence inculpating Carroll is testimony that the jewelry manufacturing machines were thoroughly dirty and full of cob-webs, that a worker on the premises never saw them in operation during the working day, that the owners of Sheba Bracelets, Inc. did not spend much time in the office, and that despite this seeming inactivity almost $535,000 worth of gold in almost daily purchases of approximately 150 ounces of gold was bought between April 2, 1951 and September 27, 1951, a period of six months.

Furthermore, the prosecution introduced evidence from which the jury can infer that a supposedly very active customer, indeed, apparently the only customer over approximately a six-month period, was non-existent.

---

1. The theory is that the defendant, by taking out a gold license, assented to the search provisions of the gold statutes and regulations. Cf. Shapiro v. United States,

1948, 335 U.S. 1, 32–33, 68 S.Ct. 1375, 92 L.Ed. 1787 ; Zap v. United States, 1946, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477.

There are no rigid formulas for examining a case of circumstantial evidence. See Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150; United States v. Valenti, 2 Cir., 134 F.2d 362, certiorari denied, 1943, 319 U.S. 761, 63 S.Ct. 1317, 87 L.Ed. 1712; United States v. Becker, 2 Cir., 1933, 62 F.2d 1007; Note, Sufficiency of Circumstantial Evidence in a Criminal Case, 55 Col.L.Rev. 549 (1955). Enough has been shown in this case to warrant a submission to the jury.

The motion to dismiss the conspiracy count is granted.

The motions charging duplicity, illegal search and seizure, and insufficiency of evidence are denied.