Marks O. MORRISON, Plaintiff,

v.

The INTERNATIONAL HARVESTER COMPANY OF AMERICA, a New Jersey Corporation, Defendant.

Civ. A. No. 6689.

United States District Court
D. Colorado.
April 23, 1962.

Mitchell & Forbes, Rocky Ford, Colo., for plaintiff.

Clarence L. Bartholic, Denver, Colo., for defendant.

DOYLE, District Judge.

The defendant seeks an order setting aside the verdict and judgment herein in favor of the plaintiff and directing the entry of judgment in favor of the defendant, The International Harvester Company, or, in the alternative, an order granting a new trial. The contentions are that:

First, the evidence is insufficient to sustain the verdict and judgment in the amount of $7,520.00. It is said that the Court erred in refusing to grant the defendant's motion at the conclusion of plaintiff's case, which motion was renewed at the conclusion of all the evidence. It is said that the plaintiff failed to establish that defendant unlawfully interfered with the contractual relations of the plaintiff.

The second point is that there is a dearth of evidence to establish that the plaintiff suffered damages in the amount of the verdict, or in any amount, and it is urged that the verdict must be set aside because of this.

The complaint herein alleges that in the year 1959, and previously, plaintiff was a farm machinery and equipment dealer for the defendant at Lyman, Nebraska, and that in June, 1959, he notified the defendant of his intent to sell his implement business. A further allegation is that he received, in October, 1959, an offer in the amount of $32,000.00 from responsible buyers, but that the defendant, on December 1, 1959, intentionally and unlawfully interfered with this contract of sale by refusing to consent to the assignment of the plaintiff's franchise. Defendant denied all these allegations.

The case was submitted to the jury under instructions which described the claim and which required the plaintiff to prove that defendant intentionally or purposefully interfered with his business relations with a third person whereby the consummation of a contract with the third person was prevented.

The elements of interference, intent, and actual prevention of the business relationship, were described and defined in the instructions. It was also pointed out to the jury that the franchise contract between plaintiff and defendant provides that it cannot be assigned, which provision gave to the defendant a right to determine whether it would issue a franchise to a prospective purchaser. The jury was further instructed that this contractual provision would give to defendant the privilege to prevent the assignment unless the jury found that defendant had held out to plaintiff that it would

assign the franchise to a responsible buyer as a result of which plaintiff changed his position in reliance thereon and as a consequence of such reliance on the promise of the defendant thus made, defendant was precluded from asserting the nonassignability of the franchise.

The plaintiff purchased the farm implement business in question in the year 1952 for the sum of $22,000.00. Previously, plaintiff had been employed as a zone manager for International in the particular area surrounding Lyman, Nebraska. His dealership at Lyman proved very successful until 1959, at which time he commenced a supplemental business on his leased premises. At some time in early 1959, plaintiff decided that he might sell his equipment business and in June, 1959, he notified Wilson, the Zone Manager of International, of his intention to do so. Wilson discussed with him the possibility of finding a suitable buyer and, in fact, after that Wilson talked to prospective buyers within the area. In fact, in one instance, Wilson asked for a financial statement to be submitted to International from such a prospective buyer. In October, 1959, plaintiff found a buyer who was financially responsible. This buyer furnished a financial statement reflecting that he had adequate capital to continue the operation as well as to buy the business. The amount agreed upon was $32,000.00—this included plaintiff's home at Lyman, Nebraska.

International knew of the proposed transaction, but it was not until December 1, 1959, that International suddenly decided not to consent to the assignment. At that time the District Manager, in company with the zone manager, visited plaintiff at Lyman, and informed him that in the event he gave up his dealership they would not continue an International agency in Lyman. They said they had concluded that the territory would not support an additional dealership. They then informed the buyer, the Meininger brothers, of their decision.

Plaintiff's position is that he believed at all times that he would be allowed to sell the business if he produced a financially responsible buyer and that this belief was induced and fortified by the actions and conduct of defendant in examining the financial condition of prospective purchasers in aiding him in finding a suitable buyer, and in not discouraging the plaintiff in his efforts to sell the business.

The detriment which plaintiff claims he suffered as a result of his belief that he could sell the business, is the reduction of inventory in contemplation of such a sale. He maintains that after June, 1959, he allowed the inventory to become depleted in anticipation of his sale of the entire business. He, therefore, claims that defendant is estopped, or precluded from asserting the nonassignability clause (paragraph 27) of the franchise contract. Defendant's position on this is that paragraph 28 of the franchise precludes any modification of contract by any representative of the company other than a corporate officer. The Court is of the opinion, however, that paragraph 28 does not apply here because in the case at bar the alleged modification, or waiver, is not an express one by any representative of the company, but rather is one which arises by operation of law based upon acts and conduct of the company acting through authorized agents. Goodman v. Dicker, 83 U.S.App.D.C. 353, 169 F.2d 684, (1948).

Moreover, the Court is of the opinion that the evidence was sufficient to justify submission to the jury of the question of waiver, or estoppel, with respect to the nonassignability clause. The company was notified in June of plaintiff's intent to dispose of the business, and from that time until December first, they encouraged him to find a buyer and the subject of adequacy of the territory to continue to support a dealership at Lyman, was not raised until December 1, 1959. Prior thereto, the only problem in connection with the sale was that of financial responsibility of the prospective buyer. Moreover, the evidence sufficiently establishes that the Meiningers, the buyers produced by plaintiff, were financially responsible and were acceptable to defend-

ant; in fact, it was admitted that defendant offered the Meiningers franchises in other towns in Nebraska and in Colorado. Cf. Underwood Typewriter Co. v. Century Realty Co., 220 Mo. 522, 119 S.W. 400, 25 L.R.A.,N.S., 1173 (1909).

As to the elements of the tort of intentional interference with business or contractual relations, (4 Restatement of Torts, § 766 (1939)), the evidence adequately supports these elements, once it is concluded that the defendant does not have as a matter of law a privilege to prevent the transfer growing out of the nonassignability clause in the franchise contract. It is undisputed that International prevented the consummation of the sale of the business by refusing to issue a new franchise to the prospective buyers, the Meiningers. It is also fully established that defendant's action effectively prevented consummation of the sale.

Thirdly, there is ample evidence justifying a jury to conclude that International intended to do what it did—that its interference was purposeful in the sense required.

Although the Court had doubts as to the sufficiency of this evidence during the trial, it is now convinced of the sufficiency of the evidence to support the verdict. Defendant relies on the recent case of Pierce Ford Sales, Inc. v. Ford Motor Company (2 Cir., 1962) 299 F.2d 425, which is not applicable here from either a factual or legal standpoint.

As to the matter of damages, the formula followed by the Court in its instructions to the jury was that of out-of-pocket loss as a consequence of the failure to consummate the contract with the Meiningers. The jury was told that the proper measure of damage was the difference between the sale price had the contract been executed, and the liquidation value of the business. Evidence was offered as to the reasonable market value as of the day of the trial of the inventory and equipment. The jury was also allowed to consider the loss of $500.00 on the sale of plaintiff's home. Thus, in effect, plaintiff's loss was limited to that which resulted from his change of position in reliance as well as that which directly flowed from defendant's interference. The Court is of the opinion that the standards applied were correct and that the evidence was adequate. It is, therefore,

ORDERED that the motions for new trial and for judgment notwithstanding the verdict be, and the same are hereby denied.