Melvin M. ZELINGER, doing business as Public Distributing Company, Appellant,

v.

UVALDE ROCK ASPHALT COMPANY, Larson Distributing Company, a Colorado corporation, John L. Larson, individually and as Executor of the Estate of Otis L. Larson, and Ray L. Dergance, Appellees.

No. 7003.

United States Court of Appeals Tenth Circuit.

April 18, 1963.

ous lines of asphalt and vinyl floor tile, entered into an oral arrangement with Melvin M. Zelinger, d/b/a Public Distributing Company, establishing him as the distributor for its products in the Denver sales area. In June, 1955, this arrangement was formalized by a document entitled "General Provision for Sales of Azrock Floor Products to Authorized Wholesalers." This document set forth the rights and duties of the parties and adopted, by reference, price lists which were to be published by Uvalde from time to time. The business relationship between Uvalde and Zelinger continued until July, 1958, at which time Uvalde terminated Zelinger's distributorship and designated Larson Distributing Company as the exclusive distributor of its products in the area. When Zelinger objected Uvalde sent him a formal notification of termination for cause pursuant to the written agreement.

Uvalde brought this suit to recover the amount owed by Zelinger on his account. In his answer Zelinger denied the debt, and asserted as an affirmative defense the breach of the written agreement by Uvalde. Zelinger also filed counterclaims in which he alleged the breach of the written agreement by Uvalde, a tortious interference with his distributorship contract by Larson Distributing Company, John L. Larson and Otis L. Larson, the owners and managing officers of Larson Distributing Company, and Ray L. Dergance, Uvalde's sales representative for the Denver area, and a conspiracy among all of the counterclaim defendants to wrongfully interfere with and bring about the breach of his contract. At the conclusion of the trial, the District Court directed a verdict for Uvalde on its claim based upon Zelinger's account, and also directed a verdict for Larson Distributing Company and John L. Larson, both individually and as Executor of the Estate of Otis L. Larson, on Zelinger's counterclaim against them for tortious interference with his contract. Zelinger's causes of action against Uvalde, for breach of the distributor-

Abe L. Hoffman, of Donaldson, Hoffman & Goldstein, Denver, Colo., for appellant.

John R. Evans, of Haskell, Helmick, Carpenter & Evans, Denver, Colo., for appellees.

Before MURRAH, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

PICKETT, Circuit Judge.

In January, 1955, Uvalde Rock Asphalt Company, a Texas manufacturer of vari-

ship agreement, and against Dergance, for tortious interference with his distributorship, were submitted to the jury which returned verdicts in favor of Uvalde and Dergance.

Zelinger primarily attacks the several rulings of the trial court with respect to the motions for directed verdicts and the failure of the trial court to grant his motions for directed verdicts on his counterclaims for interference with his distributorship.

■ In granting a motion for a directed verdict the court must consider the evidence in the light most favorable to the party against whom the motion is directed, and if, on the basis of the evidence and inferences to be drawn therefrom, reasonable and fair-minded persons might form different conclusions as to the facts in issue the motion should not be granted. E. g., Miller v. Brazel, 10 Cir., 300 F.2d 283; Anderson v. Hudspeth Pine, Inc., 10 Cir., 299 F.2d 874; Brown v. Alkire, 10 Cir., 295 F.2d 411; Lohr v. Tittle, 10 Cir., 275 F.2d 662; Farris v. Sturner, 10 Cir., 264 F.2d 537; Brodrick v. Derby, 10 Cir., 236 F.2d 35. Applying this standard, we are satisfied that the trial court's rulings on the motions were not erroneous.

■ Uvalde's books showed that there was due to it $29,281.34 for goods delivered to Zelinger, whose books also disclosed that this identical amount was due. Zelinger's defense was premised upon the proposition that neither he nor any of his employees had signed one of the purchase orders, and that he did not know whether the tile reflected on that purchase order had been sold to him or had been delivered to him. It is clear from the record that the purchase order in question was a master purchase order for tile which was used in the construction of the U. S. Air Force Academy at Colorado Springs, Colorado, and that it represented a sale with which Zelinger had little or nothing to do. In effect, the sale was made directly by Uvalde to the contractor, but it was channeled through Zelinger as the area distributor

for the purpose of allowing him the distributor's profit on the transaction. The evidence showing that the material was delivered and used on the job, and that Zelinger received his profit therefrom, is not controverted. It is inconceivable that any two minds would differ on the proposition that the tile was delivered to the job by Uvalde and that Zelinger owed the amount demanded in the complaint. Any breach by Uvalde of the distributorship agreement was unrelated to Zelinger's obligation to pay for the materials received and, although he may have a remedy by way of counterclaim, such breach is not available to Zelinger as a defense to the action on the account. Williams Mfg. Co. v. Strasberg, 229 Ark. 321, 314 S.W.2d 500; Mark v. Stuart-Howland Co., 226 Mass. 35, 115 N.E. 42, 2 A.L.R. 678; Springfield Seed Co. v. Walt, 94 Mo.App. 76, 67 S.W. 938; 6 Williston on Contracts § 872 (3d Ed., 1962). See Brown v. Fraley, 222 Md. 480, 161 A.2d 128; Tichnor Bros. v. Evans, 92 Vt. 278, 102 A. 1031, L.R.A. 1918C, 1025.

■ Zelinger's counterclaims against the Larson defendants were based upon a theory that Larson Distributing Company, acting through its officers, had tortiously interfered with Zelinger's distributorship agreement with Uvalde. We have heretofore said, "The rule that one may not knowingly and intentionally induce another to breach his contract with a third person is too well established to merit extended discussion or the citation of cases." Paramount Pictures, Inc. v. Leader Press, Inc., 10 Cir., 106 F.2d 229, 232. See Employers' Liability Assur. Corp. v. Freeman, 10 Cir., 229 F.2d 547; Baruch v. Beech Aircraft Corp., 10 Cir., 175 F.2d 1, cert. denied 338 U.S. 900, 70 S.Ct. 251, 94 L.Ed. 554. The Colorado rule is that an action for damages will lie against one who intentionally and without justification interferes with or induces a breach of a contractual arrangement between others, even though the contract is terminable at the will of either party. Watson v. Settlemeyer, Colo.,

372 P.2d 453; Credit Inv. and Loan Co. v. Guaranty Bank and Trust Co., 143 Colo. 393, 353 P.2d 1098; Order of Ry. Conductors v. Jones, 78 Colo. 80, 239 P. 882. The right to recover for such wrongful interference is recognized in most states. E. g., Hendler v. Cuneo Eastern Press, Inc., 2 Cir., 279 F.2d 181; American Sur. Co. v. Schottenbauer, 8 Cir., 257 F.2d 6; Baruch v. Beech Aircraft Corp., supra; Anno. 26 A.L.R.2d 1227 (1952); Anno. 9 A.L.R.2d 228 (1950); Anno. 84 A.L.R. 43 (1933).

■ Manifestly, however, a cause of action for tortious interference with a contract does not arise every time a third party negotiates with one of the contracting parties on the subject matter of the contract, or a seller deals with one buyer instead of another in a manner which may affect an existing contract.[1] A frequently cited statement of the general rule is found in Restatement, Torts § 766 (1939), where it is said:

"Except as stated in Section 698, one who, without a privilege to do so, induces or otherwise purposely causes a third person not to

(a) perform a contract with another, or

(b) enter into or continue a business relation with another

is liable to the other for the harm caused thereby."

While the Colorado Supreme Court has not specifically adopted the quoted rule its decisions are in accord with the Restatement, and the United States District Court for the District of Colorado has cited this section of the Restatement with approval. Morrison v. International Harvester Co. of America, D. Colo. 204 F.Supp. 6. Comment i following Section 766 of the Restatement states in part:

"One does not induce another to commit a breach of contract with a third

person under the rule stated in this Section when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person * * *."

Although Larson Distributing Company, through its agents, made inquiry of Uvalde and displayed an interest in becoming its distributor in the Denver area there is no evidence that it intentionally interfered with Zelinger's contract or did anything to induce its termination. Its activities were limited to contracting with Uvalde with knowledge that the contract could not be performed if the Zelinger contract continued in existence, and a jury question was not presented on this issue of its unwarranted and intentional interference with that contract. See Wolf v. Perry, 65 N.M. 457, 339 P.2d 679.

■ Zelinger urges that the undisputed evidence is such that he should have been granted directed verdicts against all of the counterclaim defendants on his counterclaims charging them with collectively interfering with and bringing about the breach of his distributorship agreement. In essence, Zelinger relies upon a conspiracy theory for these charges. In Lockwood Grader Corp. v. Bockhaus, 129 Colo. 339, 270 P.2d 193, 196, the Colorado Supreme Court listed the elements of a civil conspiracy as follows:

"To constitute a civil conspiracy there must be: (1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof."

What we have already said with respect to the activities of the Larson defend-

[1]. In applying Kansas law, this Court, in Baruch v. Beech Aircraft Corp., 10 Cir., 175 F.2d 1, cert. denied 338 U.S. 900, 70 S.Ct. 251, 94 L.Ed. 554, said that the necessary elements of a cause of action growing out of the interference with a contract are: (1) the existence of the contract; (2) knowledge of the contract on the part of the defendant; (3) intentional interference with the contract right without legal justification; and (4) resulting damages to the plaintiff.

ants refutes any assertion that, as between them and the other defendants, there was "a meeting of minds on the object or course of action" to wrongfully nullify Zelinger's contract. This leaves only Dergance and Uvalde as possible conspirators, and, with respect to them, the effect of the decision in Lockwood Grader Corp. v. Bockhaus, supra, is that a corporation and its employee do not constitute the "two or more persons" required for a civil conspiracy. Other courts have also held that a conspiracy cannot exist involving only a corporation and its officers or employees. E. g., Johnny Maddox Motor Co. v. Ford Motor Co., W.D.Tex., 202 F.Supp. 103; Tobman v. Cottage Woodcraft Shop, S.D. Cal., 194 F.Supp. 83; Bereswill v. Yablon, 6 N.Y.2d 301, 189 N.Y.S.2d 661, 160 N.E.2d 531.

 The question of conspiracy is closely related to another contention by Zelinger that the court's instruction pertaining to his cause of action for wrongful interference against Dergance was erroneous.[2] Any error in the quoted instruction was not, however, prejudicial because Dergance was entitled to a directed verdict under the rule that any interference with a corporation's contract by an officer, director or employee of the corporation who is in good faith serving the corporate interests is privileged. E. g., United States v. Islip Mach. Works, Inc., E.D.N.Y., 179 F.Supp. 585; Allison v. American Airlines, Inc., N.D.Okl., 112 F.Supp. 37; Vassardakis v. Parish, S.D.N.Y., 36 F.Supp. 1002; Rhine v. Sanders, 100 Ga.App. 68, 110 S.E.2d 128; May v. Santa Fe Trail Transp. Co., 189 Kan. 419, 370 P.2d 390; Greyhound Corp. v. Commercial Cas. Ins. Co., 259 App.Div. 317, 19 N.Y.S.2d 239.

 As other grounds for error, Zelinger asserts that the evidence was clear that the only reason that Uvalde terminated his distributorship was that it had a better opportunity with the Larson Distributing Company. He contends that this should entitle him to a directed verdict against Uvalde for breach of the distributorship contract. We agree that the evidence indicates that Uvalde would fare better with Larson Distributing Company as its distributor, but there was also evidence before the jury which supported Uvalde's theory that it was justified in terminating its distributorship arrangement with Zelinger, and Uvalde was entitled to have that theory submitted to the jury. Zelinger urges, however, that in this event the instructions were erroneous.[3] The

---

2. On this question, the court instructed the jury:

"Referring now to the counterclaim of the defendant against Ray L. Dergance, the following questions of fact are presented for your determination: First, did Uvalde breach its contract with Zelinger? And if so, you will then determine whether or not that breach was the result of unlawful inducement by Dergance upon Uvalde to make that breach. And then if you determine that question in the affirmative you will determine the damages, if any, which resulted to the defendant as a result of Dergance's unlawful act. And the burden of proof is again upon the defendant to prove by a preponderance of the evidence that Dergance did unlawfully induce Uvalde to breach its distributorship agreement with Zelinger and to prove the amount of damages resulting therefrom."

3. The Court's instructions in this connection read:

"Now, referring first to the counterclaim of Zelinger against Uvalde, the questions of fact for your determination are these: First, did the plaintiff Uvalde illegally terminate or otherwise breach its distributorship agreement with the defendant? Second, if your answer to this question is in the affirmative, you will then determine what damages, if any, were suffered by the defendant as a result of the illegal termination or breach.

"The Court has used the words, 'illegally terminate the distributorship agreement.' The agreement was illegally terminated if it was terminated in some manner or for some reason not provided for in the distributorship agreement itself. The burden of proof is upon the defendant Zelinger to prove by a preponderance of the evidence that Uvalde illegally termi-

crux of his argument is that the effect of the instruction was to submit to the jury the question of law as to whether Uvalde illegally terminated its contract. While the trial court did not use technical language, it advised the jury, in effect, that if Uvalde wrongfully breached its distributorship contract with Zelinger it should give Zelinger a judgment for his damages arising out of the breach. The court further advised the jury that a breach, or, as the court expressed it, "an illegal termination", occurred if the contract was terminated in some manner or for some cause which was not provided for in the agreement itself. The instructions submitted to the jury a factual question with respect to whether Uvalde terminated the contract for one of the reasons set forth in the contract, and advised the jury as to the legal effect of its determination of the facts. We conclude that there is no merit to this asserted error.

 Without citing any authority, Zelinger complains of the admission into evidence of certain testimony and documents relating to matters occurring during years prior to the year in which the contract was terminated. His point is that this evidence, which pertained to complaints by himself about the success of the arrangement, his failure to send his monthly invoices to Uvalde, a minor dispute over his account, and other matters which he does not specifically describe, was introduced by Uvalde for the purpose of justifying its termination of the distributorship, and that because of the remoteness of these events in point of time, Uvalde should be deemed to have waived them as grounds for complaint. He argues that, because of the waiver concept, the evidence was irrelevant and immaterial, and should not have been admitted. Under Colorado law, a

party to a contract should promptly exercise a right to terminate a contract. See Wark v. Bopp, 119 Colo. 12, 199 P.2d 892. This rule, however, is a rule of substantive law, not a rule of evidence. Whether the right to terminate has been exercised promptly is a question of fact to be determined by the jury under a standard of reasonableness. Clark v. Wheeling Steel Works, 3 Cir., 53 F. 494; Hunt Truck Sales & Serv., Inc. v. Omaha Standard, S.D.Iowa, 187 F.Supp. 796. Cf. Crofoot Lumber, Inc. v. Thompson, 163 Cal.App.2d 324, 329 P.2d 302. The waiver rule does not require the exclusion of evidence of remote breaches of the contract; it only serves to require an instruction to the jury like the one that the trial court gave in this case.[4]

 Finally, Zelinger contends that the trial court had no jurisdiction since Uvalde, a foreign corporation which was transacting business in Colorado without a certificate of authority under Section 31-35-3, Colo.Rev.Stat.1953 (Supp. 1960), is not permitted to maintain any action in any Colorado court. This question is raised for the first time on appeal, and is conclusively disposed of by Watson v. Empire Cream Separator Co., 66 Colo. 284, 180 P. 685, which holds that the failure of a foreign corporation to comply with the cited statute goes to its capacity to sue, and is a matter of defense to be pleaded by the defendant in bar of the action. See Fed.R.Civ.P. 9 (a).

 After directing a verdict for Uvalde in the amount of its account, the trial court granted Zelinger's motion to reduce the judgment by the amount which it would ordinarily have received as a distributor's bonus. Uvalde has filed a Statement of Points, and asks that the amount be reinstated in the judgment. Uvalde did not cross-appeal

---

nated or otherwise breached the agreement and also to prove the damages resulting from such illegal termination or breach."

**4.** This instruction reads:
"You are instructed that a party who has a right to terminate a contract be-

cause of the default of another must act with a reasonable degree of promptness after knowing of such default. If it fails to do so, it waives its right to rescind for that cause."

**54**

from the court's action on this motion, and consequently the judgment in this respect became final. E. g., Morley Const. Co. v. Maryland Cas. Co., 300 U.S. 185, 57 S.Ct. 325, 81 L.Ed. 593; United States v. American Ry. Express Co., 265 U.S. 425, 44 S.Ct. 560, 68 L.Ed. 1087; Abel v. Brayton Flying Service, Inc., 5 Cir., 248 F.2d 713; Wick v. Keshne, 8 Cir., 244 F.2d 146, cert. denied 355 U.S. 855, 78 S.Ct. 82, 2 L.Ed.2d 63; Mullins v. Clinchfield Coal Corp., 4 Cir., 227 F.2d 881, cert. denied 351 U.S. 982, 76 S.Ct. 1048, 100 L.Ed. 1496; Etten v. Lovell Mfg. Co., 3 Cir., 225 F.2d 844, cert. denied 350 U.S. 966, 76 S.Ct. 435, 100 L.Ed. 839; United States v. Hosteen Tse-Kesi, 10 Cir., 191 F.2d 518. See Emerson v. Labor Inv. Corp., 10 Cir., 284 F.2d 946.

Affirmed.